HARPER v INKSTER PUBLIC SCHOOLS

Docket No. 86011. Submitted January 13, 1987, at Detroit. Decided March 3, 1987. Leave to appeal applied for.

Lowell S. Harper was employed as the business manager of Inkster Public Schools from 1976 to October, 1981. The school district had Arthur Andersen and Company perform an audit in 1981. The audit was critical of financial reporting in the school district and, as a result, the superintendent and board members of the school district discharged Harper. Harper and his wife, Charlene Harper, filed suit against Inkster Public Schools and various others, including Arthur Andersen and Company, in Wayne Circuit Court claiming inter alia that Arthur Andersen was negligent in the preparation of the audit report and that, as a result, Lowell Harper was wrongfully discharged from his employment. Arthur Andersen moved for summary disposition alleging that plaintiffs had failed to state a claim upon which relief could be granted. The court, William Leo Cahalan, J., granted the motion, finding that plaintiffs' pleadings had failed to establish that Arthur Andersen had any duty toward plaintiffs. Plaintiffs appealed.

The Court of Appeals *held:*

An audit of an institution's financial records serves as a check on the authority and expertise of the institution's own financial personnel. Thus, outside audits are not performed on behalf of a business manager or internal financial personnel, but on behalf of the board, stockholders or taxpayers. To fulfill his duty toward the board, an auditor must be free to provide critical analysis and summary in lay terms, and the maximum amount of latitude must be extended to an auditor in making decisions summarizing or translating technical information. Thus, public policy concerns weigh heavily against the imposi-

REFERENCES

Am Jur 2d, Negligence §§ 33 *et seq.*

Third parties: liability of public accountant to third parties. 46 ALR3d 979.

See also the annotations in the Index to Annotations under Degree and Standard of Care.

tion of a duty of due care on the part of an auditor in regard to an audited institution's financial officers.

Affirmed.

NEGLIGENCE — AUDITS — DUTY OF DUE CARE.

An auditing firm has no duty of due care toward the financial officers of an institution whose financial records it is auditing.

*John R. Wilder, P.C.* (by *E. R. Whinham,* of Counsel), for plaintiffs.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Fred W. Freeman* and *Robert W. Powell*), for Arthur Andersen and Company.

Before: R. M. MAHER, P.J., and SHEPHERD and ALLEN,* JJ.

PER CURIAM. Plaintiffs appeal as of right from the order of the Wayne Circuit Court granting summary disposition to defendant Arthur Andersen and Company under MCR 2.116(C)(8) on plaintiffs' claim for negligence in the preparation of the audit report for codefendant Inkster Public Schools. We affirm the trial court's ruling.

As alleged in the complaint and amended complaint, plaintiff Lowell Harper was first employed as business manager of the school district in 1976. He duly performed his duties as business manager through October 21, 1981. At that time, he was wrongfully discharged from his employment by the school district superintendent and board members.

As further alleged by plaintiffs, Arthur Andersen performed an audit on the financial records of the school district on behalf of the school district in 1981. The audit was negligently performed. Relying on portions of the audit which were critical of financial reporting in the school district, the

* Retired Court of Appeals judge, sitting on the Court of Appeals by assignment.

superintendent and board members discharged plaintiff Lowell Harper. Paragraph 7 of the amended complaint concludes:

> The Defendant had a duty to the Plaintiff, an employee of the Inkster School District, to present an accurate audit report knowing an inaccurate report would cause the Plaintiff substantial harm. That in part because said Defendant, Inkster School Board relied upon the inaccurate audit report, Plaintiff, Lowell Harper, was wrongfully discharged from his position as Business Manager of the Inkster School District, causing pecuniary damage and emotional stress.

Defendant Arthur Andersen moved for summary disposition under MCR 2.116(C)(8), alleging that plaintiffs had failed to state a claim upon which relief may be granted. Arthur Andersen more specifically asserted that plaintiffs' pleadings failed to establish a duty on its part toward Lowell Harper. The trial court agreed and granted judgment for Arthur Andersen.

As we have stated many times in the past:

> In ruling on a motion for summary judgment for failure to state a claim, the court considers only the pleadings and accepts as true all well-pled allegations in testing the legal sufficiency of the complaint. *McCallister v Sun Valley Pools, Inc,* 100 Mich App 131, 135; 298 NW2d 687 (1980), lv den 411 Mich 905 (1981). A motion under GCR 1963, 117.2(1) tests only the legal, not the factual, sufficiency of the pleadings and the court should not probe the plaintiff's ability to prove the allegations in the complaint. *McCallister, supra,* p 135; *Rowe v Colwell,* 67 Mich App 543, 547-548; 241 NW2d 284 (1976), lv den 397 Mich 480 (1976). On a motion for failure to state a claim, the court should determine whether the plaintiff's claims are so clearly unenforceable that no factual devel-

opment could possibly justify plaintiff's right to recovery. *Martin v Metropolitan Life Ins Co,* 140 Mich App 441, 447; 364 NW2d 348 (1985). [*Davis v Chrysler Corp,* 151 Mich App 463, 471; 391 NW2d 376 (1986).]

It is conceded that plaintiffs' complaint is based upon a theory of negligence. Duty is a requisite element of negligence claims. *Moning v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977); *Dumka v Quaderer,* 151 Mich App 68, 72; 390 NW2d 200 (1986). The existence of a duty is a question of law for the court. *Friedman v Dozorc,* 412 Mich 1, 22; 312 NW2d 585 (1981); *Dumka, supra.*

As our Supreme Court has explained:

"It is quite possible, and not at all uncommon, to deal with most of the questions which arise in a negligence case in terms of 'duty.' Thus the standard of conduct required of the individual may be expressed by saying that the driver of an automobile approaching an intersection is under a duty to moderate his speed, to keep a proper lookout, or to blow his horn, but that he is not under a duty to take precautions against the unexpected explosion of a manhole cover in the street. But the problems of 'duty' are sufficiently complex without subdividing it in this manner to cover an endless series of details of conduct. *It is better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other,* and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, 'duty' is a question of whether the defendant is under *any* obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. *What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.*" [*Moning v Alfono,* 400 Mich 425,

437-38; 254 NW2d 759 (1977). Emphasis in original. Citing Prosser, Torts (4th ed), § 53, p 324. Accord, *Friedman v Dozorc,* 412 Mich 1, 22; 312 NW2d 585 (1981).]

In *Friedman v Dozorc, supra,* our Supreme Court considered whether an attorney owed a duty of due care to an opposing party in the course of litigation. The *Friedman* Court concluded that there was no duty, reasoning:

> The duties, professional and actionable, owed to the client by the attorney acting as advocate and adviser are broader than the obligation of reasonable investigation. Those duties concern decisions which the attorney makes on behalf of, and often in consultation with, the client, regarding the manner of proceeding with the client's cause. A decision to proceed with a future course of action that involves litigation will necessarily adversely affect a legal opponent. If an attorney were held to owe a duty of due care to both the client and the client's adversary, the obligation owing to the adversary would extend beyond undertaking an investigation and would permeate all facets of the litigation. The attorney's decision-making and future conduct on behalf of both parties would be shaped by the attorney's obligation to exercise due care as to both parties. Under such a rule an attorney is likely to be faced with a situation in which it would be in the client's best interest to proceed in one fashion and in the adversary's best interest to proceed contrariwise. However he chooses to proceed, the attorney could be accused of failing to exercise due care for the benefit of one of the parties. [*Friedman, supra,* p 23.]

We do not believe that the roles of an outside auditor and the audited institution's financial personnel are truly adversarial in the sense of those of an attorney and opposing party. However, we do

believe that the same underlying policy concerns weigh heavily against the imposition of a duty of due care on the part of the auditor in regard to the audited firm's financial officers.

It is clear that an audit of an institution's financial records serves, at least in part, as a check on the authority and expertise of the institution's own financial personnel. Thus, outside audits are not performed on behalf of a business manager or internal financial personnel, but on behalf of the board, stockholders or taxpayers. Indeed, in this instance, plaintiffs' own pleadings assert that the audit was performed on behalf of the school district.

It seems equally clear that the duties of an auditor toward the board, stockholders or taxpayers extends beyond that of mere investigation. An audit that does no more than correct deficiencies or errors in the institution's internal accounting would be of some use to the institution's own financial personnel, but would be of little use to a board of laymen ultimately charged with overseeing the institution's financial well-being. Thus, to fulfill his duty toward the board, an auditor must be free to provide critical analysis and summary in lay terms. In carrying out that duty, an auditor is likely to be confronted with situations in which the best interest of the board requires one course of conduct, while the best interest of the institution's financial personnel requires another course of conduct. As in any profession, judgment calls must be made in summarizing or translating technical information for the layman. We believe that public policy considerations require that the maximum amount of latitude be extended to an auditor in making those decisions. The extension of an auditor's liability for mere negligence to the institution's own financial personnel would be inconsis-

tent with those considerations and we decline to do so.

The parties in this case have cited decisions from other jurisdictions addressing the liability of auditors in negligence to the bankers and investors of audited corporations. See, e.g., *Credit Alliance Corp v Arthur Andersen & Co,* 65 NY2d 536; 483 NE2d 110 (1985). We take no position on the liability of an auditor under those circumstances.

Affirmed.