**Dorothy M. VOGELAAR, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 86–CV–10315–BC.**

United States District Court, E.D. Michigan, N.D.

June 25, 1987.

Shirley J. Burgoyne, Ann Arbor, Mich., for plaintiff.

James A. Brunson, Asst. U.S. Atty., Bay City, Mich., Major James W. Hatten, Office of the Judge Advocate General, Dept. of the Army, Washington, D.C., for defendant.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

This is an action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–80, and the Military Claims Act (MCA), 10 U.S.C. § 2733–37, for money damages. Plaintiff, Dorothy Vogelaar, is the mother of and next of kin to Alan Barton, deceased. Defendant, United States of America, moves to dismiss under Fed.R. Civ.P. 12(b)(1) and 12(b)(6), and for summary judgment pursuant to Fed.R.Civ.P. 56, asserting that sovereign immunity, the political question doctrine, and the foreign country, combatant activities, and misrepresentation exclusions of the FTCA bar plaintiff's claim.

Barton died in Vietnam on July 28, 1970, while serving in the United States Army. At the time of his death, Barton was listed as a deserter from his unit at Camp Radcliff, Republic of Vietnam. Alan Barton failed to appear for his unit's formation on July 19, 1970. He was reported as absent without leave, and subsequently designated as a deserter. Barton's unit departed its location at Camp Radcliff without him on October 20, 1970. On March 28, 1972, as a result of observations by the Vietnamese National Police, a squad of American soldiers was led to the site of a previously undiscovered skeleton at Camp Radcliff, later determined to be that of private Barton. Only a few of the major bones of Barton's skeleton were taken for identification. His unidentified remains were transferred to the U.S. Army mortuary in Saigon until March 23, 1973, when they were sent to Thailand and finally to Hawaii in May of 1976. On January 21, 1983, the skeletal remains of case number TSN 0138 X–15 were determined to be those of private Barton by the Central Identification Laboratory, Hawaii. The Army thereafter retracted its classification of Alan Barton as a deserter, and his recovered remains were buried with full military honors at St. Charles, Michigan on February 12, 1986.

Plaintiff alleges that following her son's death, defendant's employees, acting within the scope of their employment, failed to properly investigate the circumstances of his disappearance and improperly identified him as a deserter. She further alleges that after the remains of her son were recovered, defendant's employees failed to properly care for them and failed to timely identify and deliver them to plaintiff. The above acts and omissions are characterized as negligence and breach of contract.

The United States is generally immune from suit, except for situations in which it consents to be sued by expressly waiving its sovereign immunity. *Carelli v. Internal Revenue Service,* 668 F.2d 902, 904 (6th Cir.1982). There must be an independent basis for a waiver of the government's sovereign immunity other than jurisdictional statutes such as 28 U.S.C. § 1346. *Id.* Plaintiff relies on the Federal Tort Claims Act and the Military Claims Act, as well as 28 U.S.C. § 1346(b) to meet her jurisdictional burden. While the FTCA provides an expansive waiver of the sovereign's immunity, the Act does not represent a total waiver. *Garbarino v. United States,* 666 F.2d 1061, 1064 (6th Cir.1981).

■ The language of the statute itself is the initial guidepost in determining the scope of the waiver. "Waivers of immuni-

ty must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983) (citations and quotations omitted). Although plaintiff attempts to assert claims for breach of contractual duties, the plain language of the FTCA provides a waiver of the sovereign's immunity only for actions sounding in tort. 28 U.S.C. § 2674 provides as follows:

> The United States shall be liable, respecting the provisions of this title relating to *tort claims,* in the same manner and to the same extent as a private individual under like circumstances....

(emphasis added). Additionally, the legislative history reflects the congressional intention that the FTCA apply to "ordinary common-law torts." *Dalehite v. United States*, 346 U.S. 15, 28, 73 S.Ct. 956, 964, 97 L.Ed. 1427 (1953); *Garbarino,* 666 F.2d at 1064. Therefore, to the extent that plaintiff asserts a cause of action under the FTCA for breach of contract, or to the extent that plaintiff's claim falls within one of the express exclusions of the FTCA, this Court lacks subject matter jurisdiction to hear the claim. *See Feyers v. United States,* 749 F.2d 1222, 1225 (6th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985).

---

1. Plaintiff's argument is similar to an assertion of collateral estoppel. Collateral estoppel, or issue preclusion, may be applied against the government, *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (collateral estoppel barred government from contesting state court judgment), so long as there is mutuality. *United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984). Because the denial of plaintiff's MCA claim is a federal administrative decision, federal rather than state principles of collateral estoppel are applicable. *See Johnson v. United States,* 576 F.2d 606, 612–13 (5th Cir.1978) *cited in Ivery v. United States,* 686 F.2d 410, 413 (6th Cir.1982). With regard to the application of collateral estoppel to administrative decisions such as under the Military Claims Act, the Supreme Court has ruled that "it is sound policy to apply principles of issue preclusion to the fact-finding of administrative bodies acting in a judicial capacity." *University of Tennessee v. Elliott,*

## I. *The Military Claims Act Claim*

Plaintiff filed an administrative claim under the Federal Tort Claims Act with the Army in the first instance. Because the Army initially took the position that any acts or omissions occurred in Vietnam, plaintiff then filed an administrative claim under the Military Claims Act, 10 U.S.C. §§ 2733–37, with the Navy, which is the branch of the military designated by the Department of Defense to entertain all such claims arising out of Vietnam. The Navy denied her claim. Plaintiff seeks judicial review of her Military Claims Act claim.

The Military Claims Act is a congressionally mandated system of compensation applicable to acts or omissions occurring overseas. The MCA expressly excludes judicial review of claims adjudicated under its provisions. 10 U.S.C. § 2735. Plaintiff contends that this prohibition violates the due process clause of the fifth amendment as applied to this case, because the determination of this Court where the acts or omissions occurred might result in a "catch-22" if contrary to the administrative finding: the administrative tribunal could find that the acts occurred in the United States precluding recovery under the Military Claims Act, whereas this Court might find that the acts occurred in a foreign country precluding recovery under the Federal Tort Claims Act.[1] From the plain-

---

— U.S. ——, ——, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986).

The Court will not, however, collaterally estop the government from contesting that the omission of Barton's name from the "in-Vietnam" deserter list occurred in the United States for several reasons. First, it is not at all clear that the administrative body so found. Reading the original letter denying the Military Claims Act claim together with the memorandum to the Secretary of the Navy giving the reasons for such denial, both written by Admiral Flynn, the Court can glean only that there was a finding that the negligence, if any, in the omission occurred "primarily" in the United States because the responsibility for the list resided with the Army Enlisted Record Center in Indiana. This does not necessarily mean that the original omission did not occur in Vietnam. Additionally, there was a finding that all acts or omissions occurring in Vietnam were "reasonable under the circumstances." Defendant's Exhibit BI 77 & 100.

tiff's point of view, the alleged negligent acts or omissions must have occurred somewhere.

■ The Sixth Circuit has not addressed whether 10 U.S.C. § 2735 violates due process. However, the Third, Fifth, and Tenth Circuit Courts of Appeals have held that it does not. *Heller v. United States*, 776 F.2d 92, 98, (3rd Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986); *Towry v. United States*, 459 F.Supp. 101, 108 (E.D.La.1978), *aff'd*, 620 F.2d 568 (5th Cir.1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981); *Labash v. United States*, 668 F.2d 1153, 1156 (10th Cir.), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982). An analysis of a procedural due process challenge requires a balancing between the private interest affected and the governmental interest involved. *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). "It is well-recognized that the administrative claims procedure is an appropriate balance between individual rights and Congress' desire to avoid the disruptive effect that judicial review may have on 'the prompt and authoritative settlement of claims' against the military." *Heller*, 776 F.2d at 98. Al-

though the above analysis is sound, it is, respectfully, misplaced.

The issue of whether Congress can create a remedy that is solely administrative, unenforceable and unreviewable through the courts, is one of sovereign immunity not due process. *See Spagnola v. Mathis*, 809 F.2d 16, 28 (D.C.Cir.1986); *Bartlett ex rel. Neuman v. Bowen*, 816 F.2d 695, 712 (D.C.Cir.1987) (Bork, J., dissenting). That the government may not be sued without its consent is "all embracing." *Lynch v. United States*, 292 U.S. 571, 581, 54 S.Ct. 840, 844, 78 L.Ed. 1434 (1934). "When the United States creates rights in individuals against itself, it is under no obligation to provide a remedy through the courts. It may limit the individual to administrative remedies." *Id.* at 582, 54 S.Ct. at 844 (citations omitted). The role of the courts is limited to the elucidation of congressional intent, when asked to review claims, as here, that do not arise under the Constitution. *Spagnola*, 809 F.2d at 28.

10 U.S.C. § 2735 provides: "Notwithstanding any other provision of law, the settlement of a claim under section 2733, 2734, 2734a, 2734b, or 2737 of this title is final and conclusive." Settlement includes the "disallowance" of a claim. 10 U.S.C. § 2731. The legislative history evinces a

---

Second, the administrative decision does not resemble that of a court, nor does it have the "'essential procedural characteristics of a court.'" *Id.* at ——, 106 S.Ct. at 3226 n. 6 (quoting **Restatement (Second) of Judgments** § 83, p. 269 (1982)). In determining whether administrative officials are entitled to judicial immunity, courts have considered whether their judgments are "functionally comparable" to that of a judge by looking to the procedural safeguards attending the decision-making process. A paramount consideration is whether the administrative decision is subject to judicial review. *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1209 (6th Cir.1982). Other relevant safeguards include the right to a hearing, right to counsel, and the right to call, confront and cross-examine witnesses. *Id.* at 1210. This approach to judicial immunity is consistent with that taken by the Supreme Court in *Elliott*. Both look to the nature of the administrative proceeding. Similarly, in *Bowen v. United States*, 570 F.2d 1311 (7th Cir.1978), the court applied issue preclusion to an administrative proceeding under the Federal Aviation Act, reasoning that the proceedings were similar to that of a court because there was a right to a hearing, a right to counsel, a right to present oral

and documentary evidence, a right to call, confront, and cross-examine witnesses, a right to conduct discovery, and a right to judicial review. *Id.* at 1322–23 & n. 30. There is no right of judicial review under the Military Claims Act. Moreover, there is no provision for discovery, for an opportunity to call, confront, or cross-examine witnesses, or for any type of hearing. A Military Claims Act claim with the Navy must be in writing and claim a sum certain, 32 C.F.R. § 750.53(b), must include certain witness statements to substantiate injury, *id.* § 750.13(b), and may include a brief setting forth the law and arguments of the claimant. *Id.* § 750.13(c). Once a claim is properly presented, the Navy conducts its own investigation and is required to promptly inform the claimant in writing of the disposition of her claim, which may or may not include a statement of reasons. *Id.* § 750.19. This is the extent of a claimant's procedural rights.

In light of the foregoing, it is the opinion of the Court that issue preclusion (collateral estoppel) should not be applied to administrative findings under the Military Claims Act because the procedure is not "functionally comparable" to that of a court.

policy of prohibiting the review by other governmental entities of the administrative "settlement" of claims under the Military Claims Act. S.Rep. No. 1056, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin. News 3106, 3109. Additionally, the courts are virtually uniform in holding that § 2735 precludes judicial review of administrative determinations under the MCA, although the law is less clear in those rare instances where the denial of benefits itself is challenged on constitutional grounds. *See, e.g., Poindexter v. United States,* 777 F.2d 231, 233–34 (5th Cir. 1985) (no judicial review even where such review is sought on "broad constitutional grounds" as arbitrary, capricious, overbroad, and violative of substantive due process) (citing *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977)); *see also* 5 K. Davis, Administrative Law Treatise § 28:3, at 264 (2d ed. 1984). ("whether a statute that bars judicial review of a substantial constitutional issue would be constitutional has no clear answer in present law") the Supreme Court has never indicated that sovereign immunity may not be invoked even with respect to constitutional challenges to statutory denials of governmental benefits. 816 F.2d at 719–20 (Bork, J., dissenting). In any event, plaintiff herein merely seeks judicial review of a factual determination by the administrative body (i.e., where the acts or omissions occurred), arguing that a refusal to do so would violate due process. That Congress did not intend for the courts to engage in such a review could scarcely be more clear.

## II. *The Federal Tort Claims Act Claim*

### A. *The Foreign Country Exclusion*

■ Defendant argues that plaintiff's claims arise in a foreign country (Vietnam) and are therefore excluded under the Federal Tort Claims Act. 28 U.S.C. § 2680(k) provides as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to [a]ny claim arising in a foreign country.

28 U.S.C. § 1346(b) provides in part as follows:

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims

against the United States ... in accordance with the law of the place where the act or omission occurred.

In order to determine the applicability of the foreign country exclusion, it is necessary to discern where the claim arose. A tort claim "arises" for purposes of § 2680(k) where the alleged negligent act or omission "occurred" within the meaning of § 1346(b). *Cominotto v. United States,* 802 F.2d 1127, 1129–30 (9th Cir.1986); *Manemann v. United States,* 381 F.2d 704, 705 (10th Cir.1967); *Grunch v. United States,* 538 F.Supp. 534, 536 (E.D.Mich. 1982). In *Richards v. United States,* 369 U.S. 1, 9–10, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962), the Supreme Court held that liability under § 1346(b) is to be determined under the law of the place where the negligent act or omission actually occurs, not the law of the site of the injury or the place where the negligence has its "operative effect." Therefore, where the injury is sustained is irrelevant to the foreign country exclusion.

In applying the foreign country exclusion to the present case, plaintiff's tort claims can fairly be reduced to the following categories:

1) failure to properly investigate Barton's disappearance and negligently classifying him as a deserter;

2) failure to properly recover and care for Barton's remains;

3) failure to timely identify and deliver Barton's remains to plaintiff.

The uncontradicted evidence indicates that the initial investigation into private Barton's disappearance and his subsequent classification as a deserter were both decisions made by, or attributable to, his unit commander in Vietnam. The evidence also indicates that the Army only preserved a few of Barton's major bones, and that, although other bones were recovered in the same area, they were not preserved for consolidation with the ultimately identified skeletal remains. These acts or omissions, whether or not negligent, also occurred in Vietnam. Therefore, the Court lacks subject matter jurisdiction over the first two categories of claims listed above.

Plaintiff's only chance for recovery under the Federal Tort Claims Act is for the government's failure to timely identify and deliver to plaintiff those remains that were preserved for identification. The ultimate responsibility for identifying casualties from the Vietnam War is, and has been since its inception on March 23, 1973, with the Central Identification Laboratory (CIL), now located in Hawaii. With respect to unaccounted for personnel who are believed to be deserters, each branch of the military has an office responsible for providing CIL with a list of deserters from units in Vietnam. The CIL has no way to verify the accuracy of these lists except through the respective service. The army organization responsible for providing the deserter list is the United States Army Enlisted Record Center located at Fort Benjamin Harrison, Indiana. Initially, private Barton's name was not placed on the army "in-Vietnam" deserter list. Whether or not negligent, the delay in identifying Barton's remains which in turn resulted in the failure to deliver them to plaintiff, was clearly caused by the omission of his name from that list. In fact, when the omission of Barton's name was discovered by the Army Enlisted Record Center in Indiana, his remains were identified by the CIL within a few days.

It appears that the initial omission of Alan Barton's name from the army "in-Vietnam" deserter list occurred in Vietnam. Accordingly, the government relies on *Grunch v. United States*, 538 F.Supp. 534, 536 (E.D.Mich.1982), in arguing that the entire claim is foreclosed by the foreign country exclusion. In *Grunch*, the plaintiff, who was the wife of a serviceman, had undergone a tubal ligation at a United States military hospital in Berlin, West Germany. Some time after the operation, plaintiff moved to Michigan when her husband was transferred. She was examined by another military physician in Michigan who confirmed that plaintiff could not become pregnant. Less than two years later, plaintiff became pregnant and sued under the FTCA. Judge Harvey granted the government's motion to dismiss under the foreign country exclusion:

Plaintiffs assert that the damage suffered by them—the unexpected birth of a child—was the result of a "continuing tort" in which acts of negligence occurred both in Germany and the United States. As impliedly suggested in *Manemann, supra,* however, the initial premise, or causal foundation, of the wrong which plaintiffs allege is the negligent sterilization procedure which occurred in Germany. The act of negligence which allegedly took place in the United States, flowed directly from the acts occurring in Germany [and] was relatively minor in proportion. It certainly was not the "cause in fact" of the later pregnancy. Therefore, the entire claim must fall within the exemption of 28 U.S.C. § 2680(k).

538 F.Supp. at 537. The difficulty with this case as with *Grunch* is that several negligent acts and omissions, which occurred in different places, are alleged. The precise omissions upon which plaintiff's action is based are the initial failure to include Barton's name on the deserter list, and the failure to correct that omission once made. The failure to deliver his remains and the failure to retract his classification as a deserter are merely injurious consequences of these omissions.

As previously stated, the initial omission of Barton's name from the army "in-Vietnam" deserter list occurred in Vietnam.[2] The failure to correct that omission once made, however, occurred at Fort Benjamin Harrison, Indiana. This is evidenced by the fact that plaintiff sent letters during the 1970's to Fort Benjamin Harrison in an attempt to determine the status of her son. Moreover, one letter, which was sent to Washington D.C., specifically identified Barton as missing from Vietnam, and was answered by Major James Burns from Fort Benjamin Harrison. Additionally, the Enlisted Record Center had the sole capability of correcting the army "in-Vietnam" deserter list, which is further evidenced by the fact that this organization ultimately did correct the omission of Alan Barton's

---

**2.** Defendant's Exhibit BI 94.

name. Thus the Court is faced with several alleged negligent omissions, some occurring in Vietnam and some occurring in the United States.

 This is the exact situation faced by the court in *Grunch*. *Grunch* apparently held that the alleged negligent acts occurring in the United States were not a proximate cause of the injury, even though phrased in terms of "cause in fact." A claim "arises" for purposes of § 2680(k) where a negligent act or omission occurs only if that act or omission is a proximate cause of the injury. *Leaf v. United States*, 588 F.2d 733, 735 (9th Cir.1978). Proximate cause is a question of fact, *Toth v. Yoder Co.*, 749 F.2d 1190, 1196 (6th Cir. 1984), and there may be more than one proximate cause. *Rosenthal v. Trans World Airlines*, 490 F.2d 1036 (6th Cir.), cert. denied sub. nom., *Trans World Airlines v. Delta Air Lines*, 417 U.S. 933, 94 S.Ct. 2645, 41 L.Ed.2d 236 (1974). The Court finds that there is a genuine issue of material fact as to whether the failure of the Army Enlisted Record Center in Indiana to correct the omission of Barton's name from the deserter list proximately caused plaintiff's injury. Therefore, the foreign country exclusion will not necessarily bar plaintiff's claim with respect to acts or omissions occurring in Indiana. To the extent that *Grunch* is not based purely on a proximate cause determination, the Court respectfully declines to follow it.

B. *The Combatant Activities Exclusion*

 Defendant also asserts that this case falls under the combatant activities exclusion of the FTCA, and that plaintiff's claim is a nonjusticiable political question. These issues could not properly be addressed prior to the Court's determination of where the alleged acts or omissions occurred. 28 U.S.C. § 2680(j) precludes "any claim arising out of the combatant activity of the military or naval forces or the Coast Guard, during time of war." Vietnam constitutes a war for purposes of the FTCA. *Morrison v. United States*, 316 F.Supp. 78, 79 (M.D.Ga.1970). There is no legislative

history on this section and some courts and commentators have urged a narrow interpretation of this exception. *See In re "Agent Orange" Product Liability Litigation*, 580 F.Supp. 1242, 1255 (E.D.N.Y. 1984). The combatant activities exclusion applies only to actions that are at least directly connected with actual hostilities during time of war. *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir.1948); Note, *The Federal Tort Claims Act*, 56 Yale L.J. 534, 549 (1947). The Court takes judicial notice of the fact that the United States entered into a peace treaty, ending the Vietnam War, on January 27, 1973.[3] Therefore, any negligent acts or omissions occurring after January 27, 1973, do not come within the combatant activities exception because they did not occur "during time of war." The CIL was not even created until March 23, 1973, let alone the "in-Vietnam" deserter list in question. Thus the failure on the part of the Army Enlisted Record Center in Indiana to correct the omission of Alan Barton's name from the "in-Vietnam" deserter list clearly is not precluded by the combatant activities exclusion of the FTCA. As for other actions or omissions, occurring prior to January 27, 1973, although the Court has already concluded that any such acts or omissions are barred by the foreign country exclusion because they occurred in Vietnam, it is the opinion of the Court that accounting for and identifying soldiers under the exigencies of a combat zone is a military operation comparable to combat itself. Accordingly, actions taken in Vietnam before the war ended fall within the combatant activities as well as the foreign country exclusion.

C. *The Political Question Doctrine*

 Similar considerations govern defendant's attempted invocation of the political question doctrine. In *Goldwater v. Carter*, 444 U.S. 996, 100 S.Ct. 533, 62 L.Ed.2d 428 (1979), the Supreme Court set forth three inquiries to determine the existence of a nonjusticiable political question:

1) Does the issue involve resolution of questions committed by the text of the

---

**3.** 20 **World Book Encyclopedia** 292j (1987).

Constitution to a coordinate branch of government?

2) Would resolution of the question demand that a court move beyond areas of judicial expertise?

3) Do prudential considerations counsel against judicial intervention?

*Id.* at 998, 100 S.Ct. at 534 (interpreting *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). The text of the Constitution provides that the oversight of the military is for the President and Congress. Article I, section 8, clauses 11 through 16 give to Congress the power to declare war, and to provide for, organize, arm, maintain, and govern the military. Article II, section 2, clause 1 provides that the President shall be the Commander-in-Chief of the armed forces.

A particularly high degree of deference is due the political branches of government in the area of military affairs. *Owens v. Brown,* 455 F.Supp. 291, 299 (D.D.C.1978). As the Supreme Court has stated: "[I]t is difficult to conceive of an area of governmental activity in which the courts have less competence." *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973). Just because a case arises in a military context, however, does not mean it is nonjusticiable. The court in *Owens* accurately interpreted *Gilligan* when it stated:

Whether the deference due particular military determinations rise to the level of occasioning nonreviewability is a question that varies from case to case and turns on the degree to which the specific determinations are laden with discretion and the likelihood that judicial resolution will involve the courts in an inappropriate degree of supervision over primary military activities.

455 F.Supp. at 300. The Supreme Court in *Gilligan* did not "hold nor imply that the conduct of the National Guard is beyond judicial review." 413 U.S. at 11, 93 S.Ct. at 2446. This is particularly true when actions of the military affect the domestic population during peacetime. *Cf. Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (adjudicating claim that President unlaw-

fully seized U.S. steel mill's in furtherance of waging Korean War); *Laird v. Tatum,* 408 U.S. 1, 15, 92 S.Ct. 2318, 2327, 33 L.Ed.2d 154 (1972) (There is a "traditional insistence on limitations on military operations in peacetime."); *Ramirez de Arellano v. Weinberger,* 745 F.2d 1500, 1548–49 & n. 8 (D.C.Cir.1984) (en banc) (Tamm, J., dissenting) (distinguishing domestic from foreign context in making political question determination). Those controversies involving the military that are dismissed as nonjusticiable political questions typically challenge strategic military decisions. *Lamm v. Weinberger,* 819 F.2d 1445, 1453 (8th Cir.1987) (cases cited); *see, e.g., Chaser Shipping Corp. v. United States,* 649 F.Supp. 736 (S.D.N.Y.1986) (challenging government's failure to warn of mines in Nicaraguan harbor); *In re Korean Air Lines Disaster of September 1, 1983,* 597 F.Supp. 613 (1984) (challenging government's alleged negligent deployment of military aircraft in geographic proximity to commercial aircraft).

A similarly high degree of deference is due the political branches of government in the related area of foreign relations. While "it is error to suppose that every case or controversy which touches on foreign relations lies beyond judicial cognizance," *Baker,* 369 U.S. at 211, 82 S.Ct. at 707, if the case "involves potential judicial interference with executive discretion in the foreign affairs field" and requests for relief seek to "dictate foreign policy" it raises a nonjusticiable political question. *Crockett v. Reagan,* 558 F.Supp. 893, 898 (D.D.C.1982), *aff'd,* 720 F.2d 1355 (D.C.Cir.), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984); *see Flynn v. Schultz,* 748 F.2d 1186, 1191 (7th Cir.1984), *cert. denied,* 474 U.S. 830, 106 S.Ct. 94, 88 L.Ed.2d 77 (1985). Defendant relies on two such cases in arguing that accounting for military casualties is per se a nonjusticiable political question. *Dumas v. President of the United States,* 554 F.Supp. 10 (D.Conn.1982) (dismissing action to require President to demand return of remains of U.S. soldiers in Korea as nonjusticiable); *Smith v. Reagan,* 637 F.Supp. 964 (E.D.N.C.1986) (dismissing action to require President to conduct foreign relations

with certain nations in Southeast Asia in order to account for U.S. soldiers). Both of these cases, however, are within the realm of attempting to dictate foreign policy.

Were the courts to entertain challenges to strategic military decisions or attempts to dictate foreign policy they would of necessity resolve questions textually committed to the political branches of government and move well beyond the parameters of judicial expertise. As a result, the national security of the United States and its relations with other countries would undoubtedly suffer. "Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention." *Haig v. Agee*, 453 U.S. 280, 292, 101 S.Ct. 2766, 2774, 69 L.Ed.2d 640 (1981). The present controversy does not, however, present such a case. Although, as stated previously, accounting for and recovering the remains of soldiers in a combat theatre during time of war is no less a strategic military decision than engaging the enemy in actual hostilities, the character of the identification process changes drastically once the war is over and the remains and identification system are returned to the United States. The military aura surrounding the untimely identification is not dispositive. There is a grave difference between deploying an aircraft carrier into the Indian Ocean and negligently operating a military jeep on a public highway in Vermont. This case is much closer to the latter than the former. The determination of whether the Army was negligent in failing to correct the omission of Alan Barton's name from the "in-Vietnam" deserter list calls only for "traditional judicial analysis and findings." *United States v. Megahey*, 553 F.Supp. 1180, 1198 (E.D.N.Y. 1982). Thus in this instance, the political question doctrine parallels the foreign country and combatant activities exclusions of the Federal Tort Claims Act, applying only to the extent that acts or omissions occurred in Vietnam during the war (e.g., the first two categories of claims).

D. *The Misrepresentation Exclusion*

 Finally, the government asserts that plaintiff's claim is barred because it is in the nature of a misrepresentation. 28 U.S.C. § 2680(h) excludes any claim arising out of "misrepresentation" or "deceit" from consideration under the FTCA. In determining whether plaintiff's claim falls within this exclusion, the Court must look to the substance of the claim asserted rather than the literal language of the complaint. *Fitch v. United States*, 513 F.2d 1013, 1015 (6th Cir.), *cert. denied*, 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95 (1975); *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976). It is the opinion of the Court that plaintiff's cause of action does not come within the ambit of the misrepresentation exception for two independent reasons.

First, plaintiff does not claim a financial or commercial loss. In enacting § 2680(h), Congress intended to adopt "the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation.'" *United States v. Neustadt*, 366 U.S. 696, 706, 81 S.Ct. 1294, 1300–01, 6 L.Ed.2d 614 (1961). That cause of action arises from a failure "to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his *economic affairs*," *id.* (emphasis added), and "has been confined very largely to the invasion of interests of a *financial* or *commercial* character." *Id.* at 711 n. 26, 81 S.Ct. at 1302 n. 26 (emphasis added). *See also Neal v. Bergland*, 646 F.2d 1178, 1183–84 (6th Cir.1981), *aff'd sub nom., Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983) (quoting the above language from *Neustadt*). Defendant's reliance on *Fitch v. United States* for the proposition that the misrepresentation exclusion applies in noneconomic settings is misplaced. In *Fitch*, the plaintiff was wrongfully inducted into the Army because of a mistake in his national lottery number, despite his appeal based on his wife's pregnancy and financial hardship. When the mistake was corrected, Fitch sought compensation for lost wages, punitive damages, and relief from the obligations to serve under an Army reserve agreement into which he had entered. 513 F.2d at

1015. The Sixth Circuit reversed the district court's award of damages, finding that Fitch's claim was barred by the misrepresentation exclusion of § 2680(h). *Id.* at 1015–16. In the present case, however, plaintiff seeks monetary compensation for mental anguish and resulting physical illness allegedly caused by the long delay in identifying her son, the misclassification of him as a deserter, and her inability to bury him, together with consequential medical expenses.

This case is similar to *Kohn v. United States*, 680 F.2d 922 (2d Cir.1982). In *Kohn*, the Second Circuit held that the misrepresentation exclusion was inapplicable to plaintiff's claim of emotional injury for the following alleged negligent acts: 1) suppressing or releasing fraudulent information regarding the circumstances of their son's death while in the Army; 2) losing his personal effects; 3) failing to provide an honor guard at his funeral; and 4) sending photographs of his autopsy to their house. *Id.* at 926. *Kohn* recognized that § 2680(h) applies only to actions arising out of "commercial decisions predicated on incorrect or incomplete information." *Id.* (citing *Neustadt*). Like the plaintiffs in *Kohn*, Mrs. Vogelaar's cause of action is not based on an "invasion of interests of a financial or commercial character." 366 U.S. at 711 n. 26, 81 S.Ct. at 1302 n. 26. For that reason it is not excluded from consideration under the FTCA as a misrepresentation or deceit.

■ Second, even if plaintiff sought relief for injury to a financial interest, her claim would not be precluded because it does not depend on a misrepresentation, but on the alleged "negligent performance of an operational task." *Neal v. Bergland*, 646 F.2d at 1183. In holding that the complaint was not based on a misrepresentation, the Sixth Circuit in *Bergland* distinguished the Federal Housing Authority's issuance of an inaccurate appraisal report of the plaintiff's house in *Neustadt* from the Farmers Home Administration's failure to exercise due care in inspecting and supervising the construction of plaintiff Neal's house. *Id.* at 1184. The former claim was based on a misrepresentation whereas the latter was not. Affirming the Sixth Circuit's decision in *Bergland*, the Supreme Court explained that unlike *Neustadt*, misstatements are not essential to plaintiff's cause of action. *Block v. Neal*, 460 U.S. at 297, 103 S.Ct. at 1094. Taking into account the application of certain exclusions under the FTCA discussed above, plaintiff Vogelaar's only chance for recovery is if she can show that the Army Enlisted Record Center at Fort Benjamin Harrison, Indiana, did not use reasonable care in failing to correct the omission of Alan Barton's name from the "in-Vietnam" deserter list. While the Army surely made misstatements to plaintiff during the course of this unfortunate saga, her claim does not depend upon them. The government may be liable under the FTCA for negligently performing operational tasks even if misrepresentations are "collaterally involved." *Guild v. United States*, 685 F.2d 324, 325 (9th Cir.1982); *Preston v. United States*, 596 F.2d 232, 238 (7th Cir.), *cert. denied*, 444 U.S. 915, 100 S.Ct. 228, 62 L.Ed.2d 169 (1979). The misrepresentation exclusion "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Block*, 460 U.S. at 297, 103 S.Ct. at 1094.

### E. *State Law*

■ Whether such a duty exists is a question of state law. Liability under the Federal Tort Claims Act is determined by looking to the law of the state in which the act or omission actually occurs, including the choice of law rules of that state. *Richards v. United States*, 369 U.S. 1, 14, 82 S.Ct. 585, 593, 7 L.Ed.2d 492 (1962). The Court has already determined that the failure to correct the omission of Barton's name from the "in-Vietnam" deserter list, whether or not negligent, occurred in Indiana. In tort actions, Indiana courts apply the law of the place of the wrong. *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623 (Ind.App.1983). The wrong is deemed to occur where the injury occurs. *Lambert v. Yellowbird, Inc.*, 496 N.E.2d

406 (Ind.App.1986). The injury alleged in this case includes the mental and physical suffering of plaintiff Dorothy Vogelaar who is, and has been since the death of her son, a resident of the State of Michigan. It is the opinion of the Court, therefore, that Indiana courts would apply Michigan law in this case.

As mentioned previously, to be cognizable under the FTCA, any duty owed to plaintiff under Michigan law must not arise from the tort of negligent misrepresentation. Moreover, the action must be one sounding in tort, not contract, or else the Court will lack subject matter jurisdiction. An action in tort, as distinguished from contract, arises when there is a breach of a duty that in no way depends on the existence of a contract. *Haas v. Montgomery Ward and Co.*, 812 F.2d 1015, 1016 (6th Cir.1987) (construing Michigan law).

Whether the government owed a duty of reasonable care to plaintiff in the identification of her son's remains is an issue of law for the court, and one of first impression under Michigan law. *Harper v. Inkster Public Schools*, 158 Mich.App. 456, 460, 404 N.W.2d 776 (1987). Michigan courts have considered such factors as the degree of foreseeability that negligent conduct would create a risk of harm to the victim, the severity of such risk, and the likelihood of occurrence before imposing a duty of reasonable care. *McKnight v. Carter*, 144 Mich.App. 623, 632, 376 N.W.2d 170 (1985); *Swartz v. Huffmaster Alarms*, 145 Mich.App. 431, 434, 377 N.W.2d 393 (1985). The Michigan Supreme Court, in defining the scope of contractual damages, has held that when the interest at stake involves "rights we cherish, dignities we respect, emotions recognized by all as both sacred and personal," mental distress is both foreseeable and likely to occur. *Kewin v. Massachusetts Mutual*, 409 Mich 401, 416, 295 N.W.2d 50 (1980). Few things are more cherished, respected, or sacred than the right to bury our dead. There is a cognizable and compensable interest under Michigan law in "the comfort of knowing that the deceased has been given a comfortable and dignified resting place." *Allinger v. Kell*, 102 Mich.App.

798, 808–09, 302 N.W.2d 576, *rev'd on other grounds*, 411 Mich. 1053, 1053–54, 309 N.W.2d 547 (1981) (citing Restatement (Second) of Torts § 868, p. 274 (1979)). Section 868 of the Restatement provides:

> One who ... negligently ... withholds ... the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body.

As the court noted in *Allinger*, there is precedent for allowing recovery for negligent infliction of emotional distress without a physical impact so long as there is some "definite and objective physical injury." *Daley v. LaCroix*, 384 Mich. 4, 12, 179 N.W.2d 390 (1970) *cited in Allinger*, 102 Mich.App. at 809, 302 N.W.2d 576. Michigan courts are very lenient in finding allegations of physical injury to be sufficient. *Apostle v. Booth Newspapers, Inc.*, 572 F.Supp. 897, 901 (W.D.Mich.1983) (allegations of weight loss, extreme nervousness, or inability to function day to day have been held sufficient).

 Plaintiff Vogelaar's claim against the government for failure to use due care in identifying her son's remains from Vietnam cannot be pigeonholed neatly into a cause of action expressly recognized by the Michigan Supreme Court. Considering the policy interests expressed directly and through incorporation regarding the treatment of dead bodies, however, together with precedent in Michigan for recovery of negligent infliction of emotional injury, it is the opinion of the Court that plaintiff states a claim upon which relief can be granted under Michigan law. When the government undertook to identify the remains of Alan Barton it owed a duty to his mother, plaintiff Dorothy Vogelaar, to proceed with reasonable care, because that plaintiff otherwise might suffer emotional distress was both foreseeable and likely. The Court finds that there is a genuine issue of material fact as to whether defendant breached its duty of due care.

### Conclusion

The Court will not review plaintiff's Military Claims Act claim. The government's

motion to dismiss for lack of subject matter jurisdiction will be granted with respect to all claims arising out of a contractual relationship, as well as all claims with respect to actions occurring in Vietnam under the foreign country and combatant activities exclusions of the Federal Tort Claims Act and the political question doctrine. As for plaintiff's claim for the failure of the Army Enlisted Record Center to timely discover and correct the omission of Barton's name from the "in-Vietnam" deserter list, defendant's motion to dismiss for lack of subject matter jurisdiction based on the foreign country, combatant activities, and misrepresentation exceptions of the FTCA and on the political question doctrine will be denied. Its motions for summary judgment and to dismiss for failure to state a claim will also be denied as to this latter claim and are moot as to the former.