MARTIN v METROPOLITAN LIFE INSURANCE COMPANY

Docket No. 73862. Submitted July 18, 1984, at Detroit.—Decided February 4, 1985.

Plaintiffs, Olly V. Martin, Joe Bean, Dolores Zimmer and Alfonso Easterwood, individually and as representatives of all similarly situated persons as a class, brought an action in the Wayne Circuit Court against defendant Metropolitan Life Insurance Company seeking to recover sums allegedly wrongfully withheld or recovered from extended disability benefits payable to the plaintiffs under a group insurance policy contract underwritten by Metropolitan and issued to plaintiffs' employer, General Motors Corporation, for the benefit of GM employees. General Motors Corporation was allowed to intervene as a party defendant. The trial court, Robert J. Colombo, J., granted Metropolitan's motion for summary judgment after determining that the plaintiffs had failed to exhaust their administrative remedies prior to bringing their suit. The administrative remedies referred to are those set forth in the collective-bargaining agreement between the United Automobile Workers Union (the plaintiffs' acknowledged bargaining agent) and General Motors Corporation, covering the employees' insurance plan. Plaintiffs appeal from that order. A motion by the International Union, United Automobile Workers to file an amicus curiae brief was granted by the Court of Appeals. *Held:*

1. The plaintiffs are seeking redress for breach of the collective-bargaining agreement, not for breach of an insurance contract. Plaintiffs were required to exhaust their administrative remedies prior to bringing suit.

2. Defendants' motion for summary judgment under GCR

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 61A Am Jur 2d, Pleading § 230.

73 Am Jur 2d, Summary Judgment § 12 *et seq.*

[2] 48A Am Jur 2d, Labor and Labor Relations § 1931.

73 Am Jur 2d, Summary Judgment § 26.

[3] 46 Am Jur 2d, Judgments § 404 *et seq.*

[4] 46 Am Jur 2d, Judgments § 521 *et seq.*

Mutuality of estoppel as prerequisite of availability of doctrine of collateral estoppel to a stranger to the judgment. 31 ALR3d 1044.

1963, 117.2(1) should have been brought as one for an accelerated judgment under GCR 1963, 116.1(5).

3. The trial court correctly determined that the doctrine of collateral estoppel does not apply to this case.

Affirmed.

1. MOTIONS AND ORDERS — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM — PLEADINGS — COURT RULES.

A motion for summary judgment on the ground that the complaint fails to state a claim upon which relief can be granted is to be tested by the pleadings alone and tests the legal basis of the complaint, not whether it can be factually supported; the factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged, and unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion should be denied (GCR 1963, 117.2[1]).

2. MOTIONS AND ORDERS — ACCELERATED JUDGMENT — EXHAUSTION OF REMEDIES — COURT RULES.

A motion for a judgment dismissing the plaintiff's action for failure to exhaust collective-bargaining remedies is properly brought as a motion for an accelerated judgment and not as a motion for summary judgment on the ground that the complaint fails to state a claim upon which relief can be granted (GCR 1963, 116.1[5], 117.2[1]).

3. ESTOPPEL — COLLATERAL ESTOPPEL.

The same ultimate issues underlying the first action must be involved in the second action and the parties must also have had a full opportunity to litigate the ultimate issues in the former action for collateral estoppel to apply.

4. ESTOPPEL — COLLATERAL ESTOPPEL.

Collateral estoppel applies in Michigan only where there is mutuality of estoppel; Michigan has rejected the use of offensive non-mutual collateral estoppel.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *David K. Barnes, Jr., Elizabeth J. Larin* and *Susan B. Fellman*), for plaintiffs.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Thomas G. Kienbaum, Kenneth J. Mc-*

Intyre, *Philip M. Frost, Joseph C. Marshall, III,* and *Theodore R. Opperwall),* and *Nancy Mayer,* of counsel, for Metropolitan Life Insurance Company.

*David M. Davis,* for General Motors Corporation.

Amicus Curiae:

*Jordan Rossen,* General Counsel, and *Leonard R. Page,* Associate General Counsel, for International Union, UAW.

Before: V. J. BRENNAN, P.J., and ALLEN and GRIBBS, JJ.

V. J. BRENNAN, P.J. Plaintiffs appeal as of right from a January 1, 1984, Wayne County Circuit Court order which granted partial summary judgment to defendants. GCR 1963, 117.2(1). The trial court had determined that prior to bringing suit the plaintiffs had failed to exhaust their administrative remedies as set forth in the collective-bargaining agreement between the United Automobile Workers Union (the plaintiffs' acknowledged bargaining agent) and General Motors Corporation, covering the General Motors Corporation (GM) employees' insurance plan. Although the plaintiffs' suit was technically dismissed, the trial court retained jurisdiction in the event that plaintiffs did exhaust their administrative remedies.

In their complaint[1] filed against defendant Metropolitan Life Insurance Company,[2] the plaintiffs alleged that as GM employees they were insured

---

[1] On September 11, 1981, on behalf of herself and as representative of all similarly situated persons, plaintiff Martin initially brought this action against defendant Metropolitan. On April 15, 1982, an amended complaint was filed adding Bean, Zimmer, and Easterwood as named plaintiffs.

[2] On June 23, 1982, GM filed a motion to intervene as a party defendant. On August 4, 1983, the trial court granted GM's motion.

under a group insurance policy contract underwritten by Metropolitan and issued to GM for the benefit of GM's employees. While insured under the policy, each named plaintiff became totally disabled and each had received the maximum number of weeks of sickness and accident insurance benefits payable under the policy. Plaintiffs further alleged that they were then entitled to receive extended disability benefits (EDB) from Metropolitan.

The plaintiffs alleged that the policy provided that the amount of monthly EDB as shown in the benefit schedule is to be reduced by an amount equal to the monthly equivalent of the total of other benefits for which the employee is eligible, such as Social Security Disability Insurance Benefits under the Federal Social Security Act. The policy also provided that the extended disability benefit payment computations presumed eligibility for Social Security Disability Insurance Benefits and that any amounts which have been deducted by Metropolitan from the EDB are to be paid to the employee upon presentation of satisfactory evidence that the Social Security Disability Insurance Benefits were applied for and denied.[3]

---

[3] The portion of GM's Supplemental Agreement covering the insurance program which discusses extended disability benefit reductions states in part:

"(3) Extended Disability Benefit computations presume eligibility for Social Security Disability Insurance Benefits and pension plan and retirement program disability retirement benefits. However, such presumption of pension plan and retirement program disability retirement benefits shall not be made with respect to any Extended Disability Benefit payments due for the 12-month period immediately following the date of expiration of the maximum number of weeks for which the employe is entitled to receive Sickness and Accident Benefits. Amounts deducted from Extended Disability Benefits on this basis are paid upon presentation of satisfactory evidence that these benefits were applied for and denied; provided, however, that a reduction in Extended Disability Benefits is made in an amount equal to Social Security Disability Insurance Benefits that would have been

Plaintiffs averred that they each presented satisfactory evidence to Metropolitan that their individual applications for Social Security Disability Insurance Benefits had been submitted and denied. Metropolitan, therefore, paid to each plaintiff EDB which were not reduced by social security disability payments the plaintiffs would have received.

Each plaintiff subsequently appealed from the denial of social security benefits and each was awarded retroactive benefits to the original date of his or her determined disability. Plaintiffs alleged that Metropolitan then notified each plaintiff that the retroactive awards were considered to be overpayments of EDB and Metropolitan demanded that each plaintiff repay the alleged overpayment in either a lump sum or by Metropolitan's withholding sums from future payments to offset the initial payments of duplicative benefits.

The plaintiffs brought this action to recover the sums allegedly wrongfully recovered by Metropolitan as a result of the repayment of the alleged overpayments. In short, the plaintiffs alleged that Metropolitan breached the group insurance policy it issued to GM by reducing the amount of EDB payments by the amount of retroactively awarded social security benefits.

In its amended answer, as one of several defenses (including waiver, novation, accord and satisfaction), Metropolitan alleged that plaintiffs' claims were barred because the terms of the insurance coverage as reflected in the group policy contract were negotiated by and between GM and the UAW, as agent and representative of all UAW members including the named plaintiffs, and the terms were part of the collective-bargaining contracts as negotiated. The collective-bargaining sup-

payable except for refusal to accept vocational rehabilitation services."

plemental agreement which covered the insurance plan has been consistently interpreted, intended, and expected by GM, Metropolitan, and the UAW (the UAW concurs in defendant's position herein) to allow for the recovery of such overpayment. Metropolitan also claimed that the plaintiffs were barred from bringing suit because of their failure to exhaust the remedies available under the insurance supplement. Metropolitan also filed a counterclaim against plaintiffs alleging that if plaintiffs prevailed each would receive a windfall at Metropolitan's expense, that payment of benefits without reduction of the retroactive award was made by mutual mistake, and that the contract should be reformed to provide that the retroactive award would create an overpayment as was intended by the parties who negotiated the agreement. Metropolitan requested judgment against the plaintiffs individually in the amount of any outstanding overpayment of EDB resulting from the retroactive awards.

Metropolitan then filed a motion for summary judgment to dismiss plaintiffs' complaint, alleging *inter alia* that the plaintiffs' suit sought redress for a "denied claim" and the suit was based on a breach of the collective-bargaining agreement. Metropolitan claimed that plaintiffs, therefore, failed to exhaust their administrative remedies prior to bringing suit. After two hearings on defendants' motion, the trial court agreed with Metropolitan's arguments and also found that collateral estoppel did not apply to the instant action.

Plaintiffs' first claim is that the trial court erred in ruling that plaintiffs must exhaust their remedies for the review of denied claims as contained in the supplemental bargaining agreement before plaintiffs could bring this suit. Plaintiffs argue that they are seeking redress for breach of an

insurance contract and not for breach of a collective-bargaining agreement. We disagree.

In *Graves v Wayne County,* 124 Mich App 36; 333 NW2d 740 (1983), the Court set forth the standards for this Court's review of a grant or denial of a summary judgment motion based on GCR 1963, 117.2(1):

"The motion is to be tested by the pleadings alone. The motion tests the legal basis of the complaint, not whether it can be factually supported. The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged. Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion under this subrule should be denied. *Partrich v Muscat,* 84 Mich App 724, 729-730; 270 NW2d 506 (1978)." 124 Mich App 40.

Although the trial court was asked to grant defendants' motion under this subrule, it is our opinion that this motion should have been brought as one for accelerated judgment under GCR 1963, 116.1(5), because the plaintiffs' complaint was dismissed for failure to exhaust collective-bargaining remedies. The merits of plaintiffs' pleadings were not actually addressed and we cannot review plaintiffs' complaint because dismissal was not based upon plaintiffs' failure to state an actionable claim. We will, however, review the propriety of granting defendants' motion under GCR 1963, 116.1(5).

The focus of plaintiffs' argument is that they are not seeking redress for a denied claim. Rather, plaintiffs maintain that their claim is against defendant Metropolitan for its subsequent manipulation of plaintiffs' funds.

The Supplemental Agreement covering the in-

surance plan sets forth a six-step[4] procedure for

[4] Procedure for Review of Denied Claims

"To afford employes a means by which they can seek review and possible reconsideration of a denied claim, internal procedures of General Motors Corporation will provide a procedure along the following lines:

"A. With respect to claims denied by the Metropolitan Life Insurance Company
    "Step 1. Following receipt of the formal notification letter from Metropolitan by which the employe (or beneficiary, following the death of the employe) is advised of the reasons for the denial of his claim, the employe or beneficiary may request the representative which his local union has designated to discuss insurance matters to review the reasons for the denial with the local management representative.
    "Step 2. The local management representative will review the employe's case with the local union representative. If needed, more details with respect to the reasons for the denial will be obtained from the Metropolitan by the local management representative and, if appropriate, he will advise what, if anything, the employe or beneficiary can do to support the claim for payment of benefits. At this meeting, there will be furnished to the local union representative copies of all of the material pertinent to the claim which Metropolitan has made available for examination.
    "Step 3. If, after discussion with the local management representative, the local union representative contests the position of Metropolitan as reflected by the local management representative he may refer the case on an appeal form provided for that purpose to the International Union for review with the Corporation. A copy of such appeal form shall be presented to the local management representative.
    "Step 4. The International Union will notify the Corporation of its intent to review a case on a Step 4 appeal form provided for such purpose. The Corporation will request a review by Metropolitan and will attempt to resolve the case with the International Union by providing a written answer with respect to Metropolitan's determination on such form.
    "Step 5. If the Corporation and the International Union are unable to resolve their differences, the Corporation upon written request of the International Union, will request a review by Metropolitan. Such request to the Metropolitan will be in writing and will incorporate the Union's position. The Metropolitan review of the claim will be conducted by a committee of three employes of Metropolitan, at least one of whom shall be an officer of Metropolitan.
    "Step 6. Metropolitan will report to the International Union and to the Corporation its action as the result of such review.

"Information regarding any undue delay in the issuance of a Sickness and Accident Benefit check, in the release of a determination by Metropolitan with respect to a suspended claim, lack of coverage,

review of denied claims and a four-step procedure for review of denial of medical expenses or questions concerning coverage.

In *Rhodes v Aetna Life Ins Co,* 135 Mich App 735; 356 NW2d 247 (1984), the plaintiff was a member of the UAW and entitled to group disability insurance benefits under an insurance plan collectively bargained for between Chrysler and the UAW. Employee disability benefits were provided by Chrysler through a policy underwritten by Aetna. The plaintiff received extended disability benefits which were eventually terminated by Aetna. An employee's right to disability benefits was subject to two procedures as provided by two agreements (1976 and 1979) entered into between Chrysler and the UAW. These agreements supplemented the master bargaining agreement. The 1979 agreement between Chrysler and the UAW created a procedure for review of terminated or denied benefits. When the employee disputed the denial or termination of benefits, a six-step review procedure was to be followed. This procedure is similar to, but not as detailed as, the review procedure in the instant case.[5] Aetna claimed that

insufficient payment of a claim, or an anticipated claim, may be requested by the local union representative in the same manner as set forth in Steps 1 and 2 of the procedure outlined herein. In such instances, the local management representative shall expedite either the benefit check or the Metropolitan determination, or shall provide the requested information with respect to lack of coverage, insufficient payment of a claim, or an anticipated claim. Any such issue which cannot be resolved locally may be appealed as set forth in Step 4 of the procedure outlined herein."

[5] *Rhodes, supra,* 135 Mich App 738-739:

" 'To afford employees a means by which they can seek review and possible reconsideration of a denied claim, internal procedures of Chrysler Corporation and the Aetna Life Insurance Company will provide a procedure along the following lines:

" '(1) The formal notification letter from the plant group insurance representative by which the employee is advised that his claim is

the plaintiff never utilized the procedures and never sought internal review of Aetna's decision to terminate benefits. The plaintiff claimed that her cause of action arose under the insurance contract and not under the collective-bargaining agreement, as plaintiffs in the instant case also claim.

In *Rhodes,* the plaintiff argued that she did not have to exhaust her administrative remedies because the insurance contract did not provide for or require any petition for internal review and thus she could seek immediate redress with the courts.

The *Rhodes* Court disagreed:

"Plaintiff is not a primary party to the insurance contract under which she seeks benefits. She did not

denied will inform the employee that if he has any questions regarding the denial they may be referred to the plant group insurance office.

" '(2) Upon request, the plant group insurance office will advise what if anything the employee can do to support his claim for payment benefits.

" '(3) The employee may request a Union representative to discuss insurance matters with local management to obtain this information.

" '(4) Upon request, a representative of local management will review the employee's case with the Union representative. At this meeting, there will be furnished to the Union representative all the material pertinent to the claim including any detailed explanation of the reasons for the denial of the claim.

" '(5) If, after discussion with the representative of local management, the Local Union representative contests the position of management, he can refer the case to the International Union for review with the Corporation in Detroit. At such time he should advise local management of his intention.

" '(6) The Corporation and the International Union will review the case, as at present, and if they are unable to resolve their differences the Corporation at the request of the Union will request a review by Aetna and will incorporate in such request the Union's position. Such review will be conducted by a committee of three employees of Aetna, at least one of whom shall be an officer of Aetna.

" '(7) Aetna will report to the International Union and to the Corporation its action as the result of such review.' "

individually purchase an insurance policy from the defendant. The sole parties to the contract are the insurer, defendant, and the policyholder, Chrysler. Any rights that plaintiff may have to collect benefits under the insurance contract are created solely by virtue of her membership in the UAW and by virtue of the collective-bargaining agreement entered into between the UAW and Chrysler. *Harris v Metropolitan Life Ins Co,* 542 F Supp 1 (ED Mich, 1980), aff'd 672 F2d 917 (CA 6, 1981). * * * [T]he disability insurance in this case constitutes part of an employee benefit plan subject to the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1001 *et seq.* Plaintiff's disability benefits are funded through an insurance contract sponsored and maintained by Chrysler, an employer engaged in commerce. 29 USC 1002(1) and 1003(a). The question presented here is thus a matter of federal law, 29 USC 1144(a) and (c); *Alessi v Raybestos-Manhattan, Inc,* 451 US 504; 101 S Ct 1895; 68 L Ed 2d 402 (1981), and conflicting principles of Michigan insurance law are therefore preempted." 135 Mich App 739-740.

The sole issue before the *Rhodes* Court was whether the plaintiff was required to exhaust her contractual remedies pursuant to the agreement prior to initiating suit. After it was determined that the plaintiff's claim arose under the collective-bargaining agreement and not under the insurance contract, the Court concluded that the plaintiff was indeed required to exhaust her contractual remedies:

"Federal courts considering this issue have uniformly held that a plaintiff seeking benefits covered by ERISA must first exhaust his or her internal collective-bargaining remedies before going to court. Failure to do so is excused only where plaintiff establishes that the remedy would be futile or that he or she was denied access to the internal procedure. *Haeberle v Bd of Trustees of Buffalo Carpenters Health-Care, Dental, Pension & Supplemental Funds,* 624 F2d 1132 (CA 2, 1980); *Amato v Bernard,* 618 F2d 559 (CA 9, 1980); *Lucas v Warner &*

*Swasey Co,* 475 F Supp 1071 (ED Pa, 1979); *Taylor v Bakery & Confectionary Union & Industry International Welfare Fund,* 455 F Supp 816 (ED NC, 1978). Thus, the trial court in this case did not err in concluding that plaintiff was required to exhaust her contractual remedies prior to instituting her circuit court action." *Rhodes,* 135 Mich App 740-741.

It is, therefore, our opinion that the plaintiffs in the instant suit were required to exhaust their administrative remedies, which are clearly set forth in the agreement (fn 4).

Plaintiffs also claim that the trial court erred in its determination that defendant was not collaterally estopped from raising the exhaustion of remedies defense. The trial court was correct in ruling that the doctrine of collateral estoppel does not apply to the instant case. In *Bush v Metropolitan Life Ins Co,* 656 F2d 231 (CA 6, 1981), the plaintiff did not bring a class action suit. Her suit was solely against Metropolitan. In the instant case, GM is an additional defendant and the instant plaintiffs are several individuals and they also purport to represent thousands of other similarly situated individuals.

Michigan has rejected the use of offensive nonmutual collateral estoppel. See *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37; 191 NW2d 313 (1971); *Stolaruk Corp v Dep't of Transportation,* 114 Mich App 357; 319 NW2d 581 (1982). The federal courts, however, can apply collateral estoppel offensively.

In *Parklane Hosiery Company, Inc v Shore,* 439 US 322; 99 S Ct 645; 58 L Ed 2d 552 (1979), the United States Supreme Court abandoned the mutuality requirement for collateral estoppel and held that the offensive use of this doctrine is within the trial court's discretion to determine when it should be applied.

The Court explained that the doctrine should not be used offensively when it would be unfair to the defendant or where a plaintiff could easily have joined in the earlier action but did not do so. An example of unfairness to the defendant would include a situation where the defendant in the first action was sued for nominal or small damages and "he may have little incentive to defend vigorously, particularly if future suits are not foreseeable". 439 US 330.

Unfairness also includes a situation where:

"[T]he judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant. Still another situation where it might be unfair to apply offensive estoppel is where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." 439 US 330-331 (footnotes omitted).

In the instant case, the plaintiffs argue that we should apply the federal doctrine of offensive collateral estoppel to preclude defendants from relitigating the issues defendant Metropolitan lost in the *Bush* case. In our opinion, regardless of which doctrine we apply, collateral estoppel does not preclude litigation of the issue of exhaustion of remedies. Under the Michigan doctrine, mutuality is not present, and under the federal doctrine, the plaintiffs could have joined in the *Bush* suit as party plaintiffs. Furthermore, the use of offensive collateral estoppel here would be unfair to the defendants, first, because defendant GM was not a party to *Bush,* and second, because of the addition of defendant GM, new facts and additional proofs essential to the outcome of the case have been raised which the Sixth Circuit Court of Appeals did not address in its opinion. Furthermore, the

court reached its decision based upon general rules of insurance contract interpretation rather than on principles of federal law, *i.e.,* the application and interpretations of collectively bargained ERISA insurance plans. (We decline to comment on the merits of the *Bush* opinion).

Furthermore, the same ultimate issues underlying the first action must be involved in the second action for collateral estoppel to apply and the parties must also have had a full opportunity to litigate the ultimate issues in the former action. *Stolaruk, supra. Parklane, supra* (issues actually litigated and necessary to the outcome of the first action). In *Bush, supra,* exhaustion of remedies, a procedural necessity, was neither addressed nor litigated by the parties because it was not a matter of contention.

Affirmed. We retain no further jurisdiction.