CENTRAL TRANSPORT, INC.; Central Cartage Co.; and Central On Line Data Systems, Inc., Plaintiffs–Appellants,

v.

FOUR PHASE SYSTEMS, INC.; Motorola, Inc.; and Codex Corporation, Defendants–Appellees.

No. 90–1789.

United States Court of Appeals, Sixth Circuit.

Argued May 14, 1990.

Decided June 19, 1991.

---

Patrick A. Moran (argued), Terri L. North, Simpson & Moran, Birmingham, Mich., Fredric A. Smith, Nedelman, Romzek, Smith & Frank, Southfield, Mich., for plaintiffs-appellants.

Kenneth J. McIntyre, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., Paul F. Ware (argued), Michael J. Tuteur, Goodwin, Procter & Hoar, Boston, Mass., for defendants-appellees.

Before JONES and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Plaintiffs-appellants, Central Transport, Inc., Central Cartage Company and Central On Line Data Systems, Inc. (COLDS), all subsidiaries of Centra, Inc., brought this action in district court against defendants-appellees, Four Phase Systems, Inc., and Codex Corporation, as well as their parent corporation Motorola, Inc., alleging the following: 1) misrepresentation against Codex; 2) breach of contract against Codex; 3) tortious interference with contract against Motorola and Four Phase; 4) tortious interference with economic opportunity and advantageous business opportunities against Motorola and Four Phase; 5) negligent interference with economic opportunity and advantageous business relationships against Motorola and Four Phase; and 6) civil violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, against all defendants. Pursuant to an arbitration clause contained in the agreement between COLDS and Codex, the district judge submitted the breach of contract claim to arbitration. The arbitration panel determined that no material breach of contract occurred and accordingly found for the defendant Codex.

The defendants subsequently moved for summary judgment in district court on the remaining claims. The plaintiffs then moved to vacate the arbitration award. After denying the plaintiffs' motion to vacate the arbitration award from which there is no appeal, the district court determined that plaintiffs' remaining claims were based on facts already determined in favor of the defendants by the arbitration panel. The district court, therefore, granted summary judgment for the defendants on the remaining claims under the doctrine of collateral estoppel or issue preclusion. For the reasons that follow, we AFFIRM the district court's grant of summary judgment for the defendants.

I

COLDS entered into a contract for the purchase of computer equipment and maintenance services with Codex. The parties memorialized the contract with a master agreement signed on May 20, 1981. COLDS' Vice–President, Andre Levesque, drafted the master agreement.

COLDS is a wholly owned subsidiary of Centra, Inc., a privately held company primarily engaged in the trucking industry that is not a party to this suit. Central Cartage Company, another wholly owned subsidiary of Centra, is engaged in short-haul trucking while its sister subsidiary, Central Transport, Inc., engages in long-haul trucking. COLDS exists to provide communications services linking Centra's trucking businesses. Among the plaintiffs, however, only COLDS was party to the master agreement with Codex.

Codex is a wholly owned subsidiary of Motorola. Motorola acquired Codex in 1977. At the time of the acquisition, Codex produced computer modems. Subsequent to the acquisition, Codex began producing computer terminals, including the model CDX–68 that COLDS purchased pursuant to the 1981 contract. Apparently, Motorola acquired Codex so that it could enter the market of providing IBM compatible hardware.

Prior to contracting with Codex, COLDS utilized an inefficient communications system to support Centra's trucking operations. COLDS owned computer equipment but lacked the capability to transfer information for the trucking companies from their various points of operation. Thus,

COLDS determined that it needed state-of-the-art terminals[1] to allow efficient telecommunications. Subsequent to seeing Codex advertisements, COLDS approached Codex to purchase such terminals. After Codex represented to COLDS that the CDX–68 had the capability to communicate with COLDS' existing computers, COLDS entered the 1981 contract with Codex. Pursuant to this master agreement, COLDS was permitted to purchase any number of Codex products, including CDX–68 series terminals, as long as the product was listed in the master agreement's schedule A.

Codex installed the terminals during 1981, but the initial installation was accompanied by problems. By April 1982, however, the network of CDX–68's functioned adequately. In 1983, however, the Federal Communications Commission (FCC) promulgated new regulations limiting terminals' radio-frequency emissions. These regulations resulted in Codex's termination of new CDX–68 sales because the emissions were above the permitted range and Codex could not correct the problem. Codex began selling a much improved CDX–268 series terminal that met the new FCC standards. COLDS, however, only purchased used or "re-manufactured" CDX–68's from Codex to avoid the FCC prohibition.

By 1983, Motorola transferred its terminal manufacturing from Codex to Four Phase, another Motorola subsidiary. Motorola had acquired Four Phase in 1982. Four Phase had developed a Series 2000 model terminal, a more sophisticated terminal that accommodates satellite-based communications. COLDS requested purchase of the Series 2000 terminals, but Four Phase refused because the new terminal was not listed on the master agreement's schedule A. Despite the CDX–68's becoming obsolete, and Four Phase's unwillingness to provide COLDS with the Series 2000 terminals under the existing contract, the parties did not negotiate a new contract.

On January 16, 1986, the plaintiffs commenced this action by filing a six count complaint. Count I alleges misrepresentation against Codex. Count II alleges breach of contract against Codex. Count III alleges that Four Phase and Motorola tortiously interfered with the COLDS–Codex contract. Count IV alleges that Four Phase and Motorola tortiously interfered with the plaintiffs' prospective economic opportunities and advantageous business relationships. Count V alleges that Four Phase and Motorola negligently interfered with the plaintiffs' economic opportunities and advantageous business relationships. Count VI alleges that all of the defendants violated the RICO statute, 18 U.S.C. §§ 1961–68.

On May 19, 1986, the district court granted defendants' motion to compel arbitration of the breach of contract claim. The arbitration clause contained in the master agreement is narrow, however, requiring only arbitration of the breach of contract issue. Thus, the district court postponed trial on the remaining counts pending outcome of the arbitration.

An arbitration panel, as designated by the parties in the master agreement, began proceedings on April 27, 1987. The panel considered voluminous amounts of evidence. The arbitration lasted 24 days, compiling 2,876 pages of testimony and 254 exhibits. On November 23, 1987, the panel entered its decision. It issued a clarification, however, in 1989 pursuant to an order by the district court.

The plaintiffs claimed at arbitration that Codex made misrepresentations prior to the formation of the contract regarding the products, breached warranties, delayed deliveries, used improper delivery methods, breached the compliance with law clause in the master agreement by violating FCC regulations, sold to COLDS used equipment, failed to meet maintenance obligations and lacked good faith in its dealings with COLDS. While the arbitration panel limited its decision to the breach of

---

**1.** Terminals are data entry devices used in a telecommunications network. In this case, Codex terminals were placed in the trucking companies' field offices to "talk" electronically with their mainframe IBM computer at their home office in Sterling Heights, Michigan.

contract claim, the panel specifically considered the many factual allegations made by the plaintiffs and made findings. The panel held that Codex did not breach the contract other than a small technical breach that resulted in no damages to COLDS. Thus, the arbitration panel held in favor of the defendants on the breach of contract claim.

On December 11, 1987, the defendants, after receiving a favorable decision at arbitration, moved for summary judgment on the remaining claims in the district court. After denying a motion by the plaintiffs to vacate the arbitration decision, and after the remand to the arbitration panel for clarification, the district judge granted defendants' motion for summary judgment on June 15, 1990, based on the collateral estoppel effect of the arbitration proceedings. The defendants now appeal the order of the district court granting summary judgment.

## II

On appeal, plaintiffs argue that the district court erred in granting summary judgment for the defendants based on the theory of collateral estoppel. The plaintiffs claim that the arbitrators' findings are not entitled to preclusive effect, in part, because the arbitrators could not decide the plaintiffs' misrepresentation, interference and RICO claims since the parties did not designate such issues for arbitration in the master agreement. The plaintiffs also contend that the decision is not entitled to preclusive effect because successful litigation in the district court of their misrepresentation claim—that Codex fraudulently induced COLDS to enter the contract—would have rendered the breach of contract claim moot. Moreover, plaintiffs claim the arbitrators' decision is not entitled to preclusive effect because COLDS did not have the opportunity to adequately litigate its case at arbitration. The plaintiffs claim that COLDS lacked this opportunity because arbitrators limited consideration to the breach of contract claim, the Federal Rules of Evidence were not applied, witnesses could not be subpoenaed and no adequate means of appeal existed.

The plaintiffs correctly recognize the four essential elements of collateral estoppel or issue preclusion. This court has held that the four requisites for issue preclusion are: 1) the issue precluded must be the same one involved in the prior proceeding; 2) the issue must actually have been litigated in the prior proceeding; 3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; and 4) the prior forum must have provided the party against whom estoppel is asserted a full and fair opportunity to litigate the issue. *N.L.R.B. v. Master Slack and/or Master Trousers Corp.*, 773 F.2d 77, 81 (6th Cir.1985). The plaintiffs claim, however, that the defendants failed to establish the four elements of collateral estoppel.

Regarding the requisites for collateral estoppel, the plaintiffs first contend that the elements of their misrepresentation, interference and RICO claims differ from the elements of the breach of contract claim. Second, the plaintiffs argue that the underlying facts of the misrepresentation, interference and RICO claims were not decided necessarily by the arbitrators and were not critical to the arbitrators' holding. Third, the plaintiffs claim that the arbitration did not offer opportunity to litigate all the issues because the plaintiffs could not offer certain witnesses or exhibits at arbitration. Finally, the plaintiffs submit that all the parties involved in the litigation were not party to the arbitration. Because of these alleged shortcomings, the plaintiffs contend that giving collateral estoppel effect to the arbitrators' decision is improper.

The defendants contend, of course, that the district court correctly held that plaintiffs were precluded from relitigating factual issues that had been fully litigated at arbitration. The defendants correctly note that federal courts ordinarily give preclusive effect to arbitrations. The defendants contend that COLDS had the opportunity to fully litigate all factual issues presented to the arbitrators.

Moreover, no procedural flaws exist, defendants contend, in the arbitration itself. The defendants argue that while the arbi-

trators were liberal in admitting evidence, this equally benefitted the plaintiffs. The defendants note that the appellants failed to raise in the district court the issue of subpoenaing witnesses at the arbitration and, therefore, are precluded from doing so now. Even if the plaintiffs had preserved the witness issue for appeal, the defendants contend that the arbitrators had the power to summon witnesses, but that the plaintiffs did not properly make such a request during arbitration. The defendants also note that the plaintiffs failed to raise to the district court the issue of introducing exhibits at arbitration and are precluded from doing so on appeal. The defendants point out also that the plaintiffs did appeal the arbitrators' decision when the district court considered and rejected their motion to vacate the arbitrators' award.

The defendants also argue that the absence of Central Transport and Central Cartage in the arbitration does not prevent collateral estoppel because these parties are in privity with COLDS as a result of their close affiliation, joint legal representation and identity of interests. The absence of Motorola and Four Phase in the arbitration, the defendants contend, is irrelevant because COLDS and its privies had a full and fair opportunity to litigate the issues and, therefore, are precluded from re-litigating them against any other defendants. Thus, the fact that only COLDS and Codex participated in the arbitration, the defendants submit, does not preclude collateral estoppel.

The defendants further submit that essential factual predicates for the plaintiffs' claims were tried and decided by the arbitrators. The defendants note that collateral estoppel applies to determinative issues that were litigated in arbitration.

### III

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, deposi-tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Canderm Pharmacal v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). This court's review of a grant of summary judgment is de novo. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990).

In the case at bar, the district judge held that, as a matter of law, the defendants were entitled to summary judgment on the misrepresentation, interference and RICO claims because underlying facts, essential to each claim, were litigated at arbitration. In so holding, the district judge correctly recognized that the Supreme Court has held that once an issue has been fully litigated and necessarily determined by an adjudicatory body, a party and its privies are precluded from raising that issue in a subsequent proceeding. *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 170–71, 104 S.Ct. 575, 578–79, 78 L.Ed.2d 388 (1984); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 & n. 5, 99 S.Ct. 645, 649 & n. 5, 58 L.Ed.2d 552 (1979). The district judge also correctly recognized that both federal and Michigan law give estoppel effect to issues actually litigated in an arbitration proceeding between the same parties[2] unless the procedures were unfair. *Ivery v. United States*, 686 F.2d 410, 413–14 (6th Cir.1982), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1428, 75 L.Ed.2d 788 (1983).

The defendants do not dispute that it is their burden to demonstrate the four elements of collateral estoppel. We agree with the district judge that each of these elements was met.

While the arbitration panel did not resolve the legal claims of misrepresentation, interference and civil RICO, the panel decided essential, underlying facts of these claims. First, as the district court specifically pointed out, COLDS repeatedly ar-

---

**2.** Collateral estoppel applies to those parties in privity with the named party. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The district court held, and we agree, that Central Cartage and Central Transport were in privity with COLDS, the only named plaintiff in the arbitration.

gued the facts underlying its misrepresentation claim to the panel. For example, COLDS' attorney argued at the arbitration:

> Gentlemen, you have to bear in mind one thing. Fraudulent inducement is simply a legal theory. If they committed fraud, that is just as much a breach of contract as their failure to give us the trade-in credits.

The misrepresentation claim, made in this context at arbitration, and the facts the plaintiffs allege underlying that claim, clearly mirror the misrepresentation allegations in Count I of plaintiffs' complaint. Consequently, the district judge correctly held, in granting summary judgment, that plaintiffs are precluded from re-litigating the facts underlying the misrepresentation count.[3]

The district judge also correctly determined that issues underlying Count III previously were litigated at arbitration. The plaintiffs allege in Count III tortious interference with the contract. Underlying the plaintiffs' claim in Count III, is the averment that Codex breached its contract with COLDS and that Motorola and Four Phase induced the breach. The arbitrators' decision that no breach of contract occurred, therefore, precludes litigation of Count III.

The plaintiffs allege in Counts IV and V, the other two interference claims, that Motorola and Four Phase instigated the transfer of terminal production from Codex to Four Phase to prevent COLDS from being able to purchase the more technically advanced CDX–268. The arbitrators specifically held that Codex's transfer of contractual obligations to Four Phase was not a breach of contract and that Codex had a right not to sell the CDX–268 because it was not listed on schedule A of the agreement. These determinations by the arbitrators preclude litigation of Counts IV and V.

Furthermore, in Count VI plaintiffs claimed civil RICO violations by the defen-

dants based on three predicate acts: 1) misrepresentation by Codex regarding the terminals; 2) breach of warranty by Codex; and 3) the defendants' unlawful transfer of terminal manufacturing from Codex to Four Phase resulting in Four Phase's refusal to sell appellants newly designed terminals. These factual predicates for the RICO claim are the same as those underlying Counts I through V, and again, were adversely determined by the panel. Consequently, we agree with the district judge that such issues cannot be re-litigated.

Our review of Counts I, III, IV, V and VI demonstrates that essential, underlying issues were involved in the arbitration, were litigated in the arbitration and were a necessary part of the arbitrators' decision. Moreover, we hold that the appellants had a full and fair opportunity to litigate the issues in the prior proceeding. As the district judge, the Honorable Paul V. Gadola, explained in his comprehensive and well-reasoned opinion:

> [T]he parties at the arbitration were represented by counsel, allowed to make opening and closing statements, presented voluminous testimonial and documentary evidence, and cross-examined witnesses following direct examination. The arbitration lasted 24 days, with the panel sitting half days, and comprised approximately 2,900 pages of testimony, roughly 300 exhibits, and 320 pages of final briefs. Moreover, even though the arbitrators were lax in admitting evidence and were not bound by the Federal Rules of Evidence ... these liberal procedures do not detract from 'the basic elements of adjudicatory procedures' that the proceedings afforded them. [Citation omitted]. Furthermore, the liberality applied to both parties equally. The plaintiffs have not shown that the arbitration process to any extent was unfair or the decision unreliable.

---

**3.** We note that the plaintiffs have not contended that Codex was induced by fraud to agree to the arbitration clause in the contract, as indeed it could not since its vice-president prepared the contract. Therefore, plaintiffs cannot rely on our decision in *C.B.S. Emp. Fed. Cr. Union v.*

*Donaldson,* 912 F.2d 1563 (6th Cir.1990), holding that where the contention is that the agreement to arbitrate was induced by fraud, the district court, rather than an arbitrator, must decide the issue.

The plaintiffs, of course, had an opportunity to appeal the arbitrators' award by moving to vacate it. This was done, vacation of the award was denied by the district court and there is no appeal of the denial. The facts contained in the summary judgment record reveal that all four elements required for collateral estoppel, as set forth in *Master Slack, supra,* were met in this case. Accordingly, we AFFIRM the district judge's grant of summary judgment for the defendants.