NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0518n.06

No. 24-1492

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

AMERISURE MUTUAL INSURANCE COMPANY, fka Michigan Mutual Insurance Company,

   Plaintiff-Appellant,

    v.

SWISS REINSURANCE AMERICA CORPORATION,

   Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

Nov 04, 2025

KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: MOORE, GRIFFIN, and RITZ, Circuit Judges.

GRIFFIN, Circuit Judge.

This appeal concerns whether collateral estoppel precludes plaintiff Amerisure Mutual Insurance Company from litigating an issue in federal court that was previously decided against it in an arbitration between Amerisure and one of its reinsurance providers, Allstate. Now, under identical reinsurance policy provisions at issue in that arbitration, Amerisure seeks a declaratory judgment to recover defense costs from a different reinsurance provider, defendant Swiss Reinsurance America Corporation ("Swiss Re"), arguing that it is not estopped from litigating the same issue because Swiss Re was not a party to the arbitration. The district court disagreed and granted summary judgment in Swiss Re's favor on collateral-estoppel grounds. We affirm.

I.

From 1979 to 1981, Amerisure issued several primary and umbrella insurance policies to Armstrong International, a manufacturer of building materials. To help cover these multi-million-dollar policies, Amerisure purchased reinsurance (insurance for insurance companies) from several reinsurance providers, including Swiss Re and non-party Allstate, under reinsurance contracts known as facultative certificates. *See Allstate Ins. Co. v. Amerisure Mut. Ins. Co.*, 2020 WL 1445615, at \*1 (N.D. Ill. Mar. 25, 2020). Pursuant to the facultative certificates between Swiss Re and Amerisure, Swiss Re must cover any liability owed by Amerisure to Armstrong up to the umbrella policy limits.

Over several decades, thousands of claimants sued Armstrong, alleging that it manufactured, distributed, or sold building materials that contained asbestos. Under its primary insurance policies with Armstrong, Amerisure paid for Armstrong's defense costs and indemnified it for its losses. When Armstrong exhausted the limits of these primary policies, it requested additional defense costs under its umbrella policies with Amerisure. Notably, Amerisure agreed to continue paying Armstrong's defense costs *in addition to*—as opposed to *within*—the umbrella policy limits.

Amerisure sought reimbursement from its reinsurance providers for the defense costs it had paid towards the Armstrong asbestos litigation. Swiss Re paid millions of dollars in reinsurance, but only up to the umbrella policy limit of $3,500,000. Swiss Re—and the other reinsurers, like Allstate—refused to reimburse defense costs that Amerisure paid *in addition to* the policy limits because the umbrella policies did not contractually obligate Amerisure to pay these costs. Those costs, the reinsurers argued, are therefore not covered by the facultative certificates.

Prior to this litigation, Allstate initiated arbitration proceedings with Amerisure to resolve the defense-cost dispute. *Id.* After eighteen months of arbitration, which included discovery, briefing, and hearings, the arbitration panel unanimously decided that the umbrella policies only required Amerisure to pay defense costs *within* the umbrella policy limits. Allstate was therefore not liable for Amerisure's payment of defense costs beyond those limits. Nonetheless, shortly after the arbitration panel issued its final decision, Amerisure sought and received judicial confirmation of the award in federal court because it considered the award favorable overall. *Id.* at *3, *7.

Years later, Amerisure filed a complaint against Swiss Re, requesting a declaratory judgment that would allow it to recover defense costs from Swiss Re based on the same umbrella policies that were at issue in the Allstate arbitration. The stakes are high: Amerisure has incurred millions of dollars of defense costs from Armstrong's asbestos litigation, well beyond the umbrella policy limits, and it anticipates more lawsuits against Armstrong in the future.

Amerisure and Swiss Re each moved for summary judgment. In its motion, Amerisure made the same arguments that it made against Allstate during arbitration to support its position that its umbrella policies with Swiss Re, which contain identical provisions to those at issue in the Allstate arbitration, obligate Swiss Re to reimburse Amerisure for any defense costs that Amerisure paid *in addition to* the umbrella policy limits. For its part, Swiss Re argued that collateral estoppel precluded Amerisure from litigating the defense-cost issue again because it was fully, fairly, and finally decided in arbitration, in Allstate's favor and against Amerisure. The district court granted summary judgment in Swiss Re's favor, holding that Amerisure was collaterally estopped from relitigating the defense-cost issue. Amerisure timely appealed.

II.

We review de novo a district court's resolution of cross-motions for summary judgment and its application of collateral estoppel. *See Stryker Corp. v. Nat'l Union Fire Ins. Co.*, 681 F.3d 819, 823 (6th Cir. 2012) (de novo review of summary judgment in a declaratory-relief suit); *In re Calvert*, 105 F.3d 315, 317 (6th Cir. 1997) (de novo review of collateral-estoppel determination). "Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party," there is "no genuine issue as to any material fact" and the movant is entitled to judgment as a matter of law. *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d. 235, 241–42 (6th Cir. 2009) (citation omitted); *see* Fed. R. Civ. P. 56(a).

III.

Collateral estoppel, also known as issue preclusion, prevents a party from "raising an argument that [it] already fully litigated in an earlier legal proceeding." *See Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015). It is an equitable doctrine that applies in the interest of fairness and judicial economy and can be set aside when its "application would contravene an overriding public policy or result in manifest injustice." *Harrington v. Vandalia-Butler Bd. of Ed.*, 649 F.2d 434, 439 (6th Cir. 1981).

To decide whether collateral estoppel applies, we look to several elements. These elements are derived from state or federal law, depending on which applies. Typically, federal courts "look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). And Congress requires federal courts to "give the same preclusive effect to a state-court judgment as

that judgment receives in the rendering state" by applying state law. *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Under Michigan law, collateral estoppel generally requires three elements to "be satisfied: (1) [an issue] 'essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel,'" unless estoppel is being asserted defensively. *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 700 F. App'x 484, 490 (6th Cir. 2017) (quoting *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–46 (Mich. 2004)). Under federal law, the elements of collateral estoppel are stated differently, though they may be treated substantively the same for purposes of this case. *See Hammer v. I.N.S.*, 195 F.3d 836, 840 (6th Cir. 1999) (outlining federal estoppel factors). But at issue here is an arbitration award—not a judgment from either federal or state court—and we have not yet decided the question whether federal or state law applies to issues concerning the preclusive effect of arbitration awards in federal court. *See W.J. O'Neil Co.*, 700 F. App'x at 489–90 ("[T]he question of whether to apply federal or Michigan preclusion law to evaluate the binding nature of an arbitration proceeding is less than clear.").

We need not resolve the novel choice-of-law question in this case, however. Although the parties agree that either Michigan or federal law governs, they do not argue that one applies over the other. Instead, they recognize, as did the district court, that the elements of collateral estoppel under federal and Michigan law are "substantially the same," so they apply both. *Compare Hamilton's Bogarts*, 501 F.3d at 650 (federal elements), *with Monat*, 677 N.W.2d at 845–46 (Michigan elements). *Cf. CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008) (recognizing a "false conflict" and thus declining to resolve the choice-of-law question where Michigan law is "consistent with . . . other possible sources of law"). We therefore apply both state and federal

law to analyze the elements of collateral estoppel that Amerisure contests: whether the relevant issue was actually litigated in arbitration, whether Amerisure had a full and fair opportunity to litigate the issue, and mutuality of estoppel.

A.

First, the relevant issue—whether Amerisure's reinsurers must reimburse it for defense costs it paid to Armstrong over the umbrella policy limits—was raised and actually litigated during the Allstate arbitration. The arbitration panel decided this issue against Amerisure, explaining that "[d]efense costs incurred by Amerisure are payable within limits . . . and covered under the respective facultative certificates until the amount of 'Reinsurance Accepted' under each facultative certificate has been met." Beyond this, the panel did not detail its reasons for ruling against Amerisure on the defense-cost issue.

Amerisure insists that a proper interpretation of the umbrella policies' drop-down provision, which states that the policy "continue[s] in force as underlying insurance in the event of exhaustion," is an issue that would decide the dispute in its favor but that was never "decided or even addressed in connection with the Allstate arbitration."[1] Although Amerisure admits that it presented its drop-down-provision argument before the arbitration panel, Amerisure contends that the arbitration panel did not specifically address this argument in its interim or final award.

A final arbitration award, however, "need not explicitly have addressed the issue [for it] to be precluded." *People v. Gates*, 452 N.W.2d 627, 631 (Mich. 1990) (applying the same reasoning where the first proceeding was a criminal trial that resulted in a general jury verdict). Although a cursory arbitration award, like a general jury verdict, "may make the determination of what issues

---

[1]According to Amerisure, the drop-down provision required it to pay for Armstrong's defense costs in addition to the umbrella policy limits and therefore requires Swiss Re to reimburse it for these defense costs.

have been decided problematic, . . . it does not automatically bar the application of collateral estoppel." *Id.* So long as the arbitration record supports the conclusion that the arbitration panel's decision necessarily decided an issue, we may apply collateral estoppel. *See id.* at 631–32; *see also Ashe v. Swenson*, 397 U.S. 436, 444 (1970) (explaining that determining the preclusive effect of a prior judgment requires courts to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration" (citation omitted)); *Dowling v. United States*, 493 U.S. 342, 350 (1990) (same).

The arbitration record supports such a conclusion here. In its pre-hearing brief submitted to the arbitration panel, Amerisure argued that the drop-down provision required it to pay Armstrong's defense costs in addition to the umbrella policy limits. Amerisure also raised the drop-down-provision argument throughout the arbitration hearing: in its opening statement to the arbitration panel, during witness examinations, and during its closing argument. Included in its briefs and hearing arguments were citations to and analyses of cases from various jurisdictions where courts interpreted similar drop-down provisions. Although the arbitration panel did not expressly address the drop-down provision, it necessarily decided that the drop-down provision does not require Amerisure to cover Armstrong's defense costs in addition to the policy limits because it decided the defense-cost issue against Amerisure.

Moreover, even if the arbitration panel overlooked the drop-down argument because, as Amerisure suggests, it did not "focus" on that argument during arbitration, Amerisure is not entitled to rejigger its arguments in support of the same issue. Amerisure's strategic failure to focus on what it now thinks is a stronger argument does not change the fact that the defense-cost

issue was raised and actually litigated in arbitration. *See United States v. United Techs. Corp.*, 782 F.3d 718, 728–29 (6th Cir. 2015) ("[I]ssue preclusion does not disappear merely because the losing party puts on a better case the second time around.").

Together, the arbitration record and award indicate that the drop-down provision was necessarily decided against Amerisure. Therefore, the defense-cost issue at the heart of this dispute was raised and actually litigated in arbitration.

B.

Amerisure also had the opportunity to fully litigate the defense-cost issue during the arbitration. Because "no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas," we consider several factors when determining whether a party had a full and fair opportunity to litigate an issue. *See Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333–34 (1971). These factors include whether the party "actively participated in the arbitration hearing," "enjoyed representation from counsel," "presented opening and closing statements," engaged in discovery, and examined witnesses. *See W.J. O'Neil Co.*, 700 F. App'x at 492–93; Restatement (Second) of Judgments § 84 cmt. c (1982) ("When arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has."). All of these factors were present in Amerisure's arbitration with Allstate. *See Allstate Ins. Co.*, 2020 WL 1445615, at *1.

Also included among the factors is whether the party estopped had a right to appeal the prior adverse decision. *Monat*, 667 N.W.2d at 847. Amerisure contends that it could not have obtained judicial review of the arbitration award because the facultative certificates with Allstate provide that the arbitration panel's decision "shall be final and binding upon the parties." But

Amerisure agreed to an arbitration process that lacked appellate review. *See id.* (applying collateral estoppel where the plaintiff voluntarily waived his right to appeal the prior judgment). Even so, Amerisure, "of course, had an opportunity to appeal the arbitrators' award by moving to vacate it." *Cent. Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 262 (6th Cir. 1991). Under the Federal Arbitration Act (FAA), "any party to the arbitration" may move to vacate the arbitration award under several circumstances. *See* 9 U.S.C. § 10. The Allstate facultative certificates did not override Amerisure's opportunity to move to vacate the award under the FAA.

Rather than move to vacate the award, however, Amerisure moved to confirm it in federal district court. *See Allstate Ins. Co.*, 2020 WL 1445615, at *1. Amerisure contends that it moved to confirm the "mixed-bag award" because it "was favorable to Amerisure overall," as Amerisure won on several other issues at arbitration. But a party's strategic decision not to appeal an adverse ruling and to instead, in Amerisure's words, "take the bad with the good," in no way undermines the preclusive nature of a final and fair adjudication. Just because Amerisure moved to confirm the award for strategic reasons—despite losing on the defense-cost issue—does not mean that Amerisure had no opportunity to move to vacate if it believed at least one of the grounds for vacatur under the FAA was present. *See* 9 U.S.C. § 10. Amerisure is therefore incorrect that it could not appeal the decision at all.

Amerisure urges us to hold, as "an issue of first impression," that the limited opportunities for appellate review in arbitration make it unfair to give preclusive power to arbitration awards. We decline to adopt Amerisure's position. Although "[j]udicial review of arbitration awards is tightly limited," *Allstate Ins. Co.*, 2020 WL 1445615, at *3 (citation omitted), we routinely apply collateral estoppel to arbitration awards, *see, e.g.*, *W.J. O'Neil Co.*, 700 F. App'x at 489–94; *Cent.*

*Transp.*, 936 F.2d at 259 ("[[F]ederal courts ordinarily give preclusive effect to arbitrations."); *Ivery v. United States*, 686 F.2d 410, 413–14 (6th Cir. 1982).

Relatedly, Amerisure argues that it did not have a full and fair opportunity to litigate the issue based on the "differences in the quality or extensiveness of the procedures followed" in arbitration proceedings and judicial actions. *See Monat*, 677 N.W.2d at 845 n.2 (quoting Restatement (Second) of Judgments § 28 (1982)). Amerisure relies on the "honorable engagement" arbitration clause, which relieves arbitrators "from all judicial formalities" and allows them to "abstain from following strict rules of law." But although the Allstate arbitration may not have been identical to a judicial proceeding in all respects, it was nonetheless "*substantially similar* in form and scope to" one. Restatement (Second) of Judgments § 84 cmt. c (1982) (emphasis added). "Moreover, even [if] the arbitrators were lax in admitting evidence and were not bound by the Federal Rules of Evidence[,] these liberal procedures [would] not detract from the basic elements of adjudicatory procedures that the proceedings afforded them. Furthermore, the [alleged] liberality applied to both parties equally." *Cent. Transp*., 936 F.2d at 261 (citation modified). And Amerisure has "not shown that the arbitration process to any extent was unfair or the decision unreliable." *Id.* (citation omitted).

Nor has Amerisure specified "an intervening change in the applicable legal context," which is another factor that could indicate the issue was not fully litigated. *See Monat*, 677 N.W.2d at 845 n.2 (quoting Restatement (Second) of Judgments § 28 (1982)). Amerisure cites no case or law to support its argument that the legal context has changed since the Allstate arbitration. Indeed, all the cases cited herein and in the district court's opinion pre-date the 2019 arbitration. The legal context surrounding collateral estoppel as it applies to arbitration has been established in federal

and Michigan state courts for decades and has not changed since Amerisure's arbitration with Allstate.

In sum, Amerisure had a full and fair opportunity to litigate the defense-cost issue in arbitration.

C.

Amerisure next contends that mutuality of estoppel is not present. This element is met when the party "taking advantage of the earlier adjudication would have been bound by it." *Monat*, 677 N.W.2d at 846 (citation omitted). Because Swiss Re was not a party to the Allstate arbitration, there is no mutuality of estoppel. Nevertheless, the lack of mutuality does not doom Swiss Re's assertion of collateral estoppel.

Mutuality of estoppel is not a core element of federal collateral estoppel because it is not required when estoppel is asserted defensively (i.e., by a defendant against a plaintiff who was a party in the prior suit). *See Blonder-Tongue*, 402 U.S. at 329 ("In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources."). Nor do federal courts necessarily require mutuality when it is asserted offensively (i.e., by a plaintiff against a defendant who was a party in the prior suit). *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–31 (1979) (distinguishing between defensive and offensive collateral estoppel and granting "trial courts broad discretion to determine when [offensive collateral estoppel] should be applied"). Michigan courts, by contrast, do require mutuality when it is asserted offensively, *see Martin v. Metro. Life Ins. Co.*, 364 N.W.2d 348, 353–54 (Mich. Ct. App. 1985), but never when it is asserted defensively, *Monat*, 677 N.W.2d at 850–51.

As the district court concluded, Swiss Re asserts collateral estoppel defensively. Indeed, Swiss Re raises collateral estoppel to defend against Amerisure's attempt to relitigate the same defense-cost issue that Amerisure previously raised and lost in arbitration. *See, e.g.*, *Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098–99 (6th Cir. 2012) ("Because the defendant in this case is the party invoking issue preclusion, defensive collateral estoppel, rather than offensive collateral estoppel, applies.").

Amerisure disagrees and argues that Swiss Re asserts estoppel offensively. Amerisure emphasizes that it was the defendant in arbitration, so it is not as though it tactically initiated an action first against Allstate and then against Swiss Re. But the distinction between Amerisure's label as the defendant in arbitration and its label as the plaintiff now is immaterial—what matters is that Amerisure's argumentative posture in both actions is the same: it argued then and argues now that it should be reimbursed for defense costs paid beyond the umbrella policy limits. So the motivation behind collateral estoppel—to prevent a party from relitigating issues that it previously lost in other proceedings—applies to this proceeding even though Swiss Re is a new party. At bottom, requiring mutuality in this case would "only encourage[] gamesmanship by [Amerisure]," *Monat*, 677 N.W.2d at 851, who could continue to litigate and arbitrate piecemeal actions with its reinsurers until it obtains a favorable ruling against one of them.

Therefore, the lack of mutuality of estoppel does not preclude us from applying collateral estoppel.

D.

Accordingly, the elements of collateral estoppel support the district court's decision to estop Amerisure from relitigating the defense-cost issue.

IV.

Amerisure alternatively argues that even if the elements of collateral estoppel are met, it would be unjust to apply it in this case. But Amerisure's fairness arguments are repetitive and, for many of the reasons explained above, do not hold water.

First, Amerisure argues, again, that the honorable-engagement provision in the Amerisure-Allstate arbitration clause renders collateral estoppel unjust because it allowed the arbitration panel to apply different legal and evidentiary standards than courts apply. As discussed above, we apply collateral estoppel to arbitration decisions, despite the different rules and procedures that arbiters follow. And none of Amerisure's out-of-circuit cases bind or persuade us to adopt a different rule. Perhaps we could be persuaded to forgo collateral estoppel if there were "reason to doubt the quality, extensiveness, or fairness of procedures followed" in an arbitration. *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979). But Amerisure does not specify any unfair conduct by the arbitration panel. Instead, Amerisure would have us adopt a broad rule that any arbitration decision that resulted from proceedings that did not apply the same rules and procedures that courts apply cannot have preclusive effect. Again, we decline to adopt such a rule.

Amerisure next argues that collateral estoppel will harm third-party Armstrong because, if Amerisure cannot collect payment for its defense costs, Amerisure may not be able to afford Armstrong's defense costs. And Armstrong, an amicus curiae, asks us to consider how "Amerisure's inability to pursue the reimbursement it anticipated to receive from Swiss Re may chill its desire to support a vigorous defense of Armstrong." How our decision impacts non-party Armstrong is irrelevant. Whether Amerisure can afford to pay costs that an arbiter decided it was not obligated to pay is irrelevant to the question whether collateral estoppel applies. It does, and any adverse consequences of the arbitration award upon Amerisure or its insureds do not by

-13-

themselves warrant reconsideration of that decision. Otherwise, every party that lost at arbitration would relitigate the issue.

Additionally—and once again—Amerisure suggests that the "difference in issue and Amerisure's focus" on the drop-down provision warrants relitigation of the defense-cost issue. But for the reasons explained above, it would be inequitable to allow Amerisure a second bite at the apple simply because it now has a different strategic focus. Parties are bound by the strategy decisions they make in arbitration as well as in litigation. The arbitration panel ruled against Amerisure, rejecting all its arguments in support of the defense-cost issue—a decision by which Amerisure is now bound.

Last, Amerisure gives us the kitchen sink, arguing that the "combination of these factors renders application of collateral estoppel grossly unfair and does not serve the objectives of the doctrine." We disagree. In fact, we find that precluding Amerisure from relitigating the same issue against Swiss Re *does* serve one of the essential purposes of the collateral-estoppel doctrine, which is to "promote[] judicial economy by preventing needless litigation." *See Parklane*, 439 U.S. at 326.

## V.

For these reasons, we affirm the district court's judgment.